# 26-946(L), 26-947

---

In the United States Court of Appeals
for the Second Circuit

---

D. JOSEPH KURTZ, Individually and on Behalf of All Others Similarly
Situated, Gladys Honigman, Individually and on Behalf of All Others
Similarly Situated,
*Plaintiffs - Appellees*,

THEODORE H. FRANK,
*Objector – Appellant*,

v.

KIMBERLY-CLARK CORPORATION, COSTCO WHOLESALE
CORPORATION,
*Defendants – Appellees*.

---

On Appeal from the United States District Court
for the Eastern District of New York, Nos. 1:14-cv-1142, 2:15-cv-02910
Pamela K. Chen, District Judge

---

## OPENING BRIEF AND SPECIAL APPENDIX
## OF APPELLANT THEODORE H. FRANK

---

Theodore H. Frank
HAMILTON LINCOLN LAW INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1629 K Street NW, Suite 300
Washington, DC  20006
(703) 203-3848
ted.frank@hlli.org

*Attorneys for Objector–Appellant*
*Theodore H. Frank*

## Corporate Disclosure Statement (FRAP 26.1)

As the disclosure requirements of Federal Rule of Appellate Procedure 26.1 require, Theodore H. Frank declares that he is an individual and, as such, is not a subsidiary or affiliate of a publicly owned corporation and there is no publicly held corporation that owns ten percent or more of any stock issued by him.

## Table of Contents

Corporate Disclosure Statement (FRAP 26.1)............................................i

Table of Authorities.................................................................iv

Jurisdictional Statement..............................................................1

Statement of the Issues...............................................................3

Statement of the Case ................................................................5

    A.    Plaintiffs bring class actions over "flushable" wipes, and the parties settle. ...............................................................5

    B.    Frank objects to the settlement and class counsel's fee request. ..........................................................................8

    C.    Payment to the class totals less than $1 million.................10

    D.    The district court approves the settlement over Frank's objection and awards a reduced attorneys' fee of over $3 million...........................................................................10

    E.    Costco settles, and class counsel collects another fee in excess of class recovery without objection. ...........................12

    F.    On Frank's appeal, this Court vacates and remands, without reaching several of Frank's issues. ........................12

    G.    On remand, the district court reaches the same result. ......14

Summary of Argument.........................................................................16

Argument............................................................................................20

I.    Because class-action settlements are predisposed to agency problems, courts must be wary of the allocation of a class-action settlement between the class and class counsel. The district court erred in thinking this settlement merited disregarding that allocation.........................................................20

    A.    Judicial scrutiny of the actual allocation of settlement benefit protects the absent class members...........................20

B.     In the absence of this scrutiny, class counsel has little incentive not to ensure it structures a settlement to receive the lion's share of settlement value..........................24

C.     The district court thus erred in treating the disproportion as inevitable. ...............................................30

II.    The district court erred in approving a settlement where "the attorneys' fees arrangement shortchanges the class." .................34

A.     The segregated fee structure is *per se* unfair to the class; the district court erred in considering it a benefit. ....35

B.     *Hasemann* was wrongly decided, and the district court erred in relying upon it. ........................................................40

C.     Public policy supports aggressive policing of Rule 23(e)'s proportionality requirement. ...........................42

Conclusion ........................................................................................44

Certificate of Compliance  with Fed. R. App. 32(a)(7)............................45

Certificate of Service ...........................................................................46

# Table of Authorities

<u>Cases</u>

*In re "Agent Orange" Prod. Liab. Litig.*,
    818 F.2d 216 (2d Cir. 1987) ........................................................22

*Allen v. Bedolla*,
    787 F.3d 1218 (9th Cir. 2015) .....................................................35

*Arkansas Teacher Ret. Sys. v. State St. Corp*,
    25 F.4th 55 (1st Cir. 2022) ..........................................................33

*Berni v. Barilla S.p.A.*,
    964 F.3d 141 (2d Cir. 2020) ...........................................................8

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ............................. 18, 22-23, 35-37, 39

*Briseño v. Henderson*,
    998 F.3d 1014 (9th Cir. 2021) ............8, 14, 21, 25, 27, 34-39, 42, 44

*In re Carrier iQ, Inc. Consumer Privacy Litig.*,
    No. 12-md-02330, 2016 WL 4474366
    (N.D. Cal. Aug. 25, 2016)........................................................25-26

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ........................................................21

*Central States Se. & Sw. Areas Health & Welfare Fund v.
    Merck-Medco Managed Care*,
    504 F.3d 229 (2d Cir. 2007)..........................................................

*City of Detroit v. Grinnell*,
    495 F.2d 448 (2d Cir. 1974) ................................................... 11, 14

*In re Clearview AI, Inc. Consumer Privacy Litig.*,
    2026 U.S. App. LEXIS 20406,
    No. 25-1673 (7th Cir. July 13, 2026).............................................41

*Dennis v. Kellogg Co.*,
    697 F.3d 858 (9th Cir. 2012) ....................................................35

*Devlin v. Scardelletti*,
    536 U.S. 1 (2002) ........................................................................2

*In re Dry Max Pampers Litig.*,
    724 F.3d 713 (6th Cir. 2013) ........................................20-22, 35, 44

*Espinal v. Victor's Café 52nd St., Inc.*,
    2019 WL 5425475, 2019 U.S. Dist. LEXIS 18364
    (S.D.N.Y. Oct. 23, 2019) ............................................................24

*Eubank v. Pella Corp.*,
    753 F.3d 718 (7th Cir. 2014) ......................................................37

*In re Facebook Biometric Info. Privacy Litig.*,
    No. 15-cv-3747 (N.D. Cal.)..................................................................

*Fager v. CenturyLink Communs., LLC*,
    854 F.3d 1167 (10th Cir. 2016) .........................................................

*Fresno Cty. Emps. Ret. Ass'n v. Isaacson*,
    925 F.3d 63 (2d Cir. 2019)..........................................................21

*Glasser v. Volkswagen of Am., Inc.*,
    645 F.3d 1084 (9th Cir. 2011) ....................................................36

*Goldberger v. Integrated Res.*,
    209 F.3d 43 (2d Cir. 2000).................................... 15, 20, 22, 24, 34

*Grant v. Bethlehem Steel Corp.*,
    823 F.2d 20 (2d Cir. 1987)..........................................................20

*Hasemann v. Gerber Prods. Co.*,
    No. 15-CV-2995 (EK) (JAM),
    2025 WL 2773748 (E.D.N.Y. Sep. 29, 2025) .....3-4, 14-15, 40-42, 44

*Holt v. Foodstate, Inc.*,
    No. 17-cv-00637,
    2020 U.S. Dist. LEXIS 7265 (D.N.H. Jan. 16, 2020) ....................26

*In re HP Inkjet Printer Litig.*,
    716 F.3d 1173 (9th Cir. 2013) ..........................................................

*Johnson v. Metro-Goldwyn-Mayer Studios Inc.*,
    2018 WL 5013764, 2018 U.S. Dist. LEXIS 177824
    (W.D. Wash. Oct. 16, 2018) ........................................................ 26

*Kukorinis v. Walmart, Inc.*,
    No. 19-cv-20592 (S.D. Fla.) .................................................... 26-27

*Kumar v. Salov N. Am. Corp.*,
    No. 14-cv-02411 (N.D. Cal.) ....................................................... 26

*Kurtz v. Costco Wholesale Corp.*,
    818 F. App'x 57 (2d Cir. 2020) ..................................................... 6

*Kurtz v. Kimberly-Clark Corp.*,
    321 F.R.D. 482 (E.D.N.Y. 2017) ................................................... 6

*Kurtz v. Kimberly-Clark Corp.*,
    142 F.4th 112 (2d Cir. 2025) ("*Kurtz II*")
    ..................................................... 2, 3-4, 5, 8, 12-15, 16, 34, 37-38

*L-3 Commc'ns Corp. v. OSI Sys.*,
    607 F.3d 24 (2d Cir. 2010) .............................................................

*Laffitte v. Robert Half Int'l*,
    376 P.3d 672 (Cal. 2016) .................................................................

*Lagarde v. Support.com, Inc.*,
    2013 WL 1994703, 2013 U.S. Dist. LEXIS 67875
    (N.D. Cal. May 13, 2013) ............................................................ 27

*In re Livingsocial Mktg. and Sales Practices Litig.*,
    298 F.R.D. 1 (D.D.C. 2013) ........................................................ 27

*Ma v. Harmless Harvest*,
    2018 U.S. Dist. LEXIS 123322, 2018 WL 1702740
    (E.D.N.Y. Mar. 31, 2018) ........................................................... 23

*Marshall v. Deutsche Post DHL,*
　　2015 WL 5560541, 2015 U.S. Dist. LEXIS 125869
　　(E.D.N.Y. Sept. 21, 2015) ........................................................ 23

*McCrary v. Elations Co.,*
　　2016 WL 777865, 2016 U.S. Dist. LEXIS 24050
　　(C.D. Cal. Feb. 25, 2016) ........................................................ 26

*McKinney-Drobnis v. Oreshack,*
　　16 F.4th 594 (9th Cir. 2021) ................................................... 34

*Moses v. New York Times Co.,*
　　79 F.4th 235 (2d Cir. 2023) ........................................ 16, 18, 34, 39

*In re Payment Card Interchange Fee & Merchant Discount
　　Antitrust Litig.,*
　　827 F.3d 223 (2d Cir. 2016) ..................................................... 3-4

*Pearson v. NBTY, Inc.,*
　　772 F.3d 778 (7th Cir. 2014) ......... 8, 16, 21-22, 26-28, 35-37, 42, 44

*Piambino v. Bailey,*
　　757 F.2d 1112 (11th Cir. 1985) ...............................................

*Plummer v. Chemical Bank,*
　　668 F.2d 654 (2d Cir. 1982) .....................................................

*Poertner v. The Gillette Co.,*
　　No. 6:12-v-00803-GAP-DAB (S.D. Fla.) ....................................

*Redman v. RadioShack Corp.,*
　　768 F.3d 622 (7th Cir. 2014) ................................................... 35

*Roes v. SFBSC Mgmt., LLC,*
　　944 F.3d 1035 (9th Cir. 2019) ......................................... 25, 35, 41

*Silverman v. Motorola, Inc.,*
　　739 F.3d 956 (7th Cir. 2013) ................................................... 36

*In re Sony VAIO Computer Notebook Trackpad Litig.,*
　　No. 09-cv-2109 (S.D. Cal.) ...................................................... 27

*In re Stericycle Sec. Litig.*,
  35 F.4th 555 (7th Cir. 2022) .........................................................8-9

*In re Walgreen Co. Stockholder Litig.*,
  832 F.3d 718 (7th Cir. 2016) ........................................................ 43

*In re World Trade Ctr. Disaster Site Litig.*,
  754 F.3d 114 (2d Cir. 2014) ...........................................................

Rules and Statutes

28 U.S.C. § 1291 ................................................................................ 1

28 U.S.C. § 1332(d) ........................................................................... 1

Fed. R. App. Proc. 4(a)(1)(A) ...........................................................

Fed. R. Civ. Proc. 23 ................................................................. 3-4, 9

Fed. R. Civ. Proc. 23(a)(4) ...............................................................

Fed. R. Civ. Proc. 23(b)(2) ............................................................... 6

Fed. R. Civ. Proc. 23(b)(3) ............................................................... 6

Fed. R. Civ. Proc. 23(e)............................................ 9, 12, 13, 14, 34, 42

Fed. R. Civ. Proc. 23(e)(2)......................................................... 11, 14, 41

Fed. R. Civ. Proc. 23(e)(2)(A)......................................................... 41

Fed. R. Civ. Proc. 23(e)(2)(B)......................................................... 41

Fed. R. Civ. Proc. 23(e)(2)(C)..................................................... 5, 30, 42

Fed. R. Civ. Proc. 23(e)(2)(C)(i) ...................................................... 19

Fed. R. Civ. Proc. 23(e)(2)(C)(ii) ..................................... 9, 11, 31, 41

Fed. R. Civ. Proc. 23(e)(2)(C)(iii) ..................... 3, 9, 11, 13, 18, 31, 39, 41

Fed. R. Civ. Proc. 23(e)(2)(D) ......................................................... 41

Fed. R. Civ. Proc. 23(e)(5)...........................................................................5

Fed. R. Civ. Proc. 23(h) ............................................................. 12, 13, 39

New York General Business Law § 349......................................29, 32-33

New York General Business Law § 350......................................29, 32-33

Other Authorities

Becker, Gary S.,
    *Crime and Punishment: An Economic Approach*,
    76 J. POL. ECON. 169 (1968)............................................................43

Declaration of Deborah McComb re Settlement Claims,
    *Poertner v. The Gillette Co.*, No. 6:12-v-00803-GAP-DAB,
    Dkt. 156 (S.D. Fla.)........................................................................27

Erichson, Howard M.,
    *How to Exaggerate the Size of Your Class Action Settlement*,
    Daily J. (Nov. 8, 2017) .........................................................................

Frank, Ted,
    *Settlement Insurance Shows Need for Court Skepticism in*
    *Class Actions*,
    CEI Open Market blog (Aug. 31, 2016).............................................

Gold, Russell M.,
    *"Clientless" Lawyers*,
    92 Wash. L. Rev. 87 (2017)............................................................23

*Merriam-Webster* ..................................................................................

Notes of Advisory Committee
    on 2003 Amendment to Rule 23......................................................

Notes of Advisory Committee
    on 2018 Amendment to Rule 23......................................................

Second Expert Decl. of Prof. William B. Rubenstein,
*In re Facebook Biometric Info. Privacy Litig.*, No. 15-cv-3747,
Dkt. 517-2 ¶ 5 (N.D. Cal. Dec. 14, 2020) ........................................ 27

Silver, Charles,
*Due Process and the Lodestar Method*,
74 Tulane L. Rev. 1809 (2000) ...................................................... 36

Wolfman, Brian,
*Judges! Stop Deferring to Class Action Lawyers*,
2 U. Mich. J. L. Reform 80 (2013) ................................................ 23

## Jurisdictional Statement

The district court had subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The two underlying actions, *Kurtz* and *Honigman*, were brought as class actions on behalf of proposed classes that each exceeded 100 members. The amount in controversy exceeds $5,000,000, exclusive of interest and costs in each of the actions. The plaintiff classes include members whose citizenship is different from the defendants' Delaware, Texas, and Washington citizenships. A-88; A-135.[1]

This court has appellate jurisdiction under 28 U.S.C. § 1291. Following a single settlement of the class actions, appellant class member Theodore H. Frank objected to approval of the proposed settlement and the plaintiffs' attorneys' fee request. A-255. On remand from the Second

---

[1] "A" stands for the joint appendix for this appeal. "SPA" stands for the special appendix in this appeal. "*Kurtz* Dkt." stands for docket numbers in the lead underlying district court case, No. 1:14-cv-01142 (E.D.N.Y.); "*Honigman* Dkt." stands for docket numbers in that district court case, No. 2:15-cv-02910 (E.D.N.Y.); "App. Dkt." stands for docket numbers in this case.

Because identical documents were filed on the separate dockets for the two consolidated cases below, only one copy of such documents is included in the appendices unless the separate documents have independent relevance to the appeal, such as the judgments, complaints, and notices of appeal.

Circuit's decision in *Kurtz v. Kimberly-Clark Corp.*, 142 F.4th 112 (2d Cir. 2025) ("*Kurtz II*"), vacating the original 2024 approval of the settlement, the district court again approved the settlement and reaffirmed its original grant of fees, SPA-1, and entered judgment on March 19, 2026. SPA-21; SPA-23. Frank filed notices of appeals in *Kurtz* and *Honigman* on April 12, 2026. A-470; A-474. These notices are timely under Fed. R. App. P. 4(a)(1)(A). Frank, as a class member who objected to settlement approval below, has standing to appeal from a final approval of a class action settlement without the need to intervene formally in the case. *Devlin v. Scardelletti*, 536 U.S. 1 (2002).

## Statement of the Issues

1.      Whether the district court erred as a matter of law or abused its discretion by approving a settlement that paid less than $1 million to the class while class counsel recovered over $3.3 million; the settlement contained provisions designed to benefit attorneys over the class that other courts called "red flags," but the district court held to be a benefit to the class; and the district court evaluated the settlement as "involving a price-premium claim for an inexpensive consumer product" when the settlement released claims for property damage.

**Standard of Review**: Settlement approval is reviewed for abuse of discretion. *Kurtz v. Kimberly-Clark Corp.*, 142 F.4th 112, 117 (2d Cir. 2025). A court abuses its discretion if its decision "rests on a legal error or clearly erroneous factual finding, or falls outside the range of permissible decisions." *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 827 F.3d 223, 231 (2d Cir. 2016). Any "issues of law underlying the Rule 23 ruling, including the question of whether the district court applied the correct legal standard to the approval of the settlement" are reviewed de novo. *Kurtz II*, 142 F.4th at 117 (internal quotation and alterations and citation omitted).

2.      Whether the district court erred or misapplied this Court's mandate in *Kurtz II* by (a) viewing the disproportionate greater-than-3:1 ratio as a "superficial concern"; and (b) interpreting the scope of Rule 23(e)(2)(C)(iii) by relying on the settlement approval in *Hasemann*

*v. Gerber Prods. Co.*, No. 15-CV-2995 (EK) (JAM), 2025 WL 2773748 (E.D.N.Y. Sep. 29, 2025), which approved a settlement with a 19:1 ratio of fees to class recovery.

**Standard of Review**: Settlement approval is reviewed for abuse of discretion. *Kurtz II*, 142 F.4th at 117. A court abuses its discretion if its decision "rests on a legal error or clearly erroneous factual finding, or falls outside the range of permissible decisions." *Payment Card*, 827 F.3d at 231. Any "issues of law underlying the Rule 23 ruling, including the question of whether the district court applied the correct legal standard to the approval of the settlement" are reviewed de novo. *Kurtz II*, 142 F.4th at 117 (internal quotation and alterations and citation omitted).

**Statement of the Case**

This is the second appeal from an order of Judge Pamela K. Chen approving class-action settlements over the objection of appellant Theodore H. Frank after remand from Frank's successful first appeal. SPA-1; *Kurtz v. Kimberly-Clark Corp.*, 142 F.4th 114 (2d Cir. 2025) ("*Kurtz II*").

This consolidated appeal arises from two underlying class actions brought by plaintiffs seeking to recover for the harm allegedly caused by alleged mislabeling of Kimberly-Clark Corporation's flushable wipes. The parties settled, but structured the settlement so that attorneys would receive several times as much as the class, but any court reduction of the fee request would redound to the defendant rather than the class. As Rule 23(e)(5) permits, class member Frank objected to these terms of the settlement as unfair under Rule 23(e)(2)(C). The district court overruled his objection, approved the settlements and $3.3 million in fee requests, and entered final judgment. Frank appeals.

A. **Plaintiffs bring class actions over "flushable" wipes, and the parties settle.**

Plaintiff-appellee D. Joseph Kurtz filed a class action against Kimberly-Clark and Costco Corporations alleging that the companies falsely labeled and advertised their wipes products as "flushable" without harming plumbing and sewer systems, and seeking damages and injunctive relief. A-84; A-131. (The settlement at issue does not include

Costco. This brief omits discussion of Costco where not relevant.) Kurtz filed his complaint on behalf of national, New York, and New Jersey purchaser classes. A-120. Meanwhile, plaintiff-appellee Gladys Honigman filed a separate class action against Kimberly-Clark similarly alleging that Kimberly-Clark had falsely labeled and advertised its wipes products as "flushable" and seeking damages and injunctive relief and proposing national classes for Kimberly-Clark and Cottonelle branded wipes. A-163. Both plaintiffs-appellees alleged that through the ordinary or directed use of these flushable wipes, consumers nationwide experienced plumbing issues, including clogged toilets, clogged pipes, flooding of home basements, and other plumbing problems. A-86; A-133.

The district court certified a Rule 23(b)(3) damages class limited to New York class members and denied certification of a nationwide class. *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 555 (E.D.N.Y. 2017). This Court affirmed the (b)(3) certification ruling while reversing certification of a 23(b)(2) injunctive relief class. *Kurtz v. Costco Wholesale Corp.*, 818 F. App'x 57 (2d Cir. 2020) ("*Kurtz I*").

In April 2022, Kurtz and Honigman, represented by the same attorneys, entered into a single shared settlement agreement with Kimberly-Clark. A-172. (Although no one formally consolidated the two cases before the district court, everyone has effectively treated the cases as a single consolidated case since the settlement.)

The settlement covered a nationwide class of all adult consumer purchasers of Kimberly-Clark's flushable wipes under various brands from February 21, 2008, to May 19, 2022, with certain limited exclusions. A-181-182 ¶¶ 1.26, 1.32. The class consists of millions of individual consumers, though the parties disclaimed knowledge of the precise class size.

Under the settlement, Kimberly-Clark would pay up to $20 million for class members to claim as compensation and separately pay class counsel's fee and expense award in an amount up to $4.1 million, subject to approval by the district court. A-185-186 ¶¶ 2.4, 2.5; A-192 ¶ 6.1. Any amounts under $20 million not claimed remain with Kimberly-Clark, as would any reduction in attorneys' fees. A-185-186 ¶¶ 2.4, 2.5. Class members would release Kimberly-Clark from all liability other than for personal injury—including for property damage and plumbing expenses. A-180 ¶ 1.24; A-193-194 ¶ 7.1; *Kurtz* Dkt. 456 at PageID #19407 *ff.*

The settlement established two tiers of recovery. Class members who submitted proofs of purchase (saved over the fourteen-year class period) can recover up to $50.60, while those who did not retain proofs of purchase for their flushable wipes purchases can recover up to $7.00. A-180 ¶ 1.27; A-184 ¶ 2.4. The settlement restricted class members to make a claim under only one of these two categories, and only one member of a household or shared physical address may file a claim, no matter how many individual consumers reside there. A-184 ¶ 2.4.

The district court authorized class notice of the settlement. A-247. There was no direct notice to class members, and no attempt to obtain lists of supermarket or drugstore customers who purchased Kimberly-Clark products.

Class counsel sought the $4.1 million the settlement permitted: $3,961,668.77 in attorneys' fees and $138,331.23 in expenses. Class counsel asked the court to use the lodestar method to award fees. *Kurtz* Dkt. 443 at 2, 19-21. Kimberly-Clark filed no opposition against the fee request.

## B. Frank objects to the settlement and class counsel's fee request.

Appellant Theodore H. Frank is a class member, as he bought Kimberly-Clark's flushable wipes during the class period. A-284. Frank is an activist attorney who founded the Center for Class Action Fairness ("CCAF"), currently part of the nonprofit Hamilton Lincoln Law Institute, whose attorneys represented Frank below and in *Kurtz II*. Frank and CCAF have won several cases establishing precedents regarding unfair class-action settlements and fee requests. *E.g.*, *Kurtz II*, 142 F.4th 114; *Briseño v. Henderson*, 998 F.3d 1014 (9th Cir. 2021); *Berni v. Barilla S.P.A.*, 964 F.3d 141 (2d Cir. 2020); *Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014); *see also In re Stericycle Sec. Litig.*, 35 F.4th 555, 572 & n.11 (7th Cir. 2022) (praising Frank's "track record" and

8

listing cases); A-288-309 (documenting, as required by preliminary approval order (A-252; A-218), dozens of successful objections).

Frank filed a timely objection challenging the fairness of the proposed settlement and class counsel's fee request. A-255.

Frank objected that the settlement disproportionately benefited the attorneys in violation of Rule 23. A-263-282. He argued that Rule 23(e)(2)(C)(ii) and (iii) require courts to examine the effectiveness of "distributing relief to the class," including any claims process, and the terms of the proposed award of attorneys' fees. This standard accordingly required the court to analyze the fairness of the ratio of fees to actual class recovery before approving the settlement under Rule 23(e). Here, Frank argued, the settlement was not fair under that measure because class counsel had negotiated a disproportionate share of the settlement for themselves. They had requested over $4 million in fees and expenses, while the class would recover only a fraction of that amount. Besides the fact universally known among the class-action bar that claims-made settlements in consumer class actions typically have meager claims rates, Frank argued that the parties had designed a claims process that was intended to—and did—throttle claims and reduce class recovery. A-274; A-284-286. Meanwhile, class counsel had negotiated a segregated fund that insulated their fee award from scrutiny and appeal; and unfairly prevented the class from recovering any reduction in that fee. Frank argued that an analysis under Rule 23(e)(2)(C)(iii) of these features of

9

settlement regarding the attorneys' fee award and proportionality of recovery, combined with the ineffective distribution of relief, precluded settlement approval. Frank argued in the alternative for a reduction of the fees to an amount proportional to actual class relief.

## C.    Payment to the class totals less than $1 million.

The settlement administrator confirmed Frank's prediction that the $20 million fund would not come close to being exhausted. It reported that, out of the multi-million-member class, class members had filed 147,645 valid claims by the August deadline: 144,977 without proof of purchase, and 2,688 with proof of purchase. The average recovery for claiming class members is $6.73, with $30.90 for those with proof of purchase, and $6.28 otherwise. Millions of other class members would receive nothing.

The total amount of the claims to be paid to the class would be $993,958.70. A-433.

## D.    The district court approves the settlement over Frank's objection and awards a reduced attorneys' fee of over $3 million.

The district court held a fairness hearing at which Frank appeared through counsel on September 7, 2022. After supplemental briefing, the court issued an order in June 2023 certifying the settlement class and approving the settlement agreement. A-380. The district court ultimately approved the settlement and awarded class counsel $3,307,666.25.

A-410. The district court found "that all four factors enumerated in Rule 23(e)(2) and the *Grinnell* factors[2] weigh[ed] in favor of final approval of the Settlement Agreement, subject to a reduction of the requested attorneys' fees." A-429.

As for Rule 23(e)(2)(C)(ii), the district court determined that "the key factor is whether the compensation *available* to the settlement class is fair and adequate, and not the extent to which the class takes advantage of the offer presented to them." A-396 (emphasis added). The court found it unnecessary to make "an evaluation of the class's actual recovery." *Id.*

With Rule 23(e)(2)(C)(iii), the court held that because the attorneys' fee award was paid from a fund separate from the settlement benefits made available to the class, the fee award "will not affect the Class's recovery," and thus "adequately protect[ed] the Class's interests." A-424.

With respect to fees, the court recognized that the requested attorneys' fees represented over 77% of the settlement's total value, which was "unreasonable under the circumstances." A-434. Despite acknowledging the unreasonableness of such a disproportionate attorneys' fee, the district court awarded fees that equaled over 73% of

---

[2] *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

11

the settlement value using its same method of calculation.[3] The court utilized the lodestar method to award fees, and reduced fees on that basis. A-435 *ff.* The total Rule 23(h) award was just over $3.3 million. A-447.

**E.  Costco settles, and class counsel collects another fee in excess of class recovery without objection.**

Meanwhile, Kurtz settled with Costco. As a result of that settlement, the class received just under $710,000 and class counsel received $3 million in fees and costs. *Kurtz* Dkt. 492. There were no objections, and the court approved the settlement and fees while Frank's appeal was pending. *Id.*

**F.  On Frank's appeal, this Court vacates and remands, without reaching several of Frank's issues.**

Frank timely appealed in both cases. *Kurtz v. Kimberly-Clark Corp.*, 142 F.4th 112 (2d Cir. 2025). Frank argued that the district court had applied the wrong legal standard under Rule 23(e) by failing to assess the allocation of recovery between the class and class counsel before approving the settlement. In particular, Frank contended that the court had erred by treating the segregated fee structure as sufficient to protect the class and by failing to consider the actual recovery to the class

---

[3] The district court's calculation included Rule 23(h) costs to be awarded to the attorneys in the denominator, but not the numerator.

(less than $1 million) in relation to the fees awarded to counsel (over $3 million). Frank noted that the segregated fee structure was a red flag that actually harmed the class, as other circuits recognize, and that it was by itself grounds to throw out the settlement as self-dealing.

This Court agreed that the district court applied the wrong legal standard. "Rule 23(e) requires courts to consider the allocation of recovery between class counsel and the class before approving a settlement," and that this requirement applies "regardless of whether a settlement is structured as two separate funds." *Kurtz II*, 142 F.4th at 118. "[C]lass recovery and the agreement on attorneys' fees should be viewed as a 'package deal' even when the two are structurally segregated," and that although "a defendant's separate funds for attorney's fees and class recovery may be a relevant consideration in assessing a settlement's fairness, it is not a replacement for the proportionality analysis required by Rule 23(e)(2)(C)(iii)." *Id.* at 120. The Court also stated that "Rule 23(e) requires its own separate analysis of fees in relation to class relief, regardless of how the court conducts its Rule 23(h) inquiry." *Id.* at 121.

The Court "decline[d], however, to reach the issue whether the settlement here is fair" and declined to reach Frank's issues relating to the *per se* unfairness of a segregated fee structure. *Kurtz II*, 142 F.4th at 117, 121 n.6. It said it might be possible for this settlement to be fair, but did not give guidance on when disproportionality would be

appropriate, other than saying the fees must be "properly earned." *Id.* at 121. *Kurtz II* vacated the district court's order and judgment approving the settlement, remanding for further proceedings consistent with its opinion. *Id.*

## G. On remand, the district court reaches the same result.

On remand, in a March 12 order, the district court reached the same result as it had before. SPA-1. It agreed to value the settlement at the actual class recovery of under $1 million, rather than the amount made available, as it had earlier. SPA-13-15. Nevertheless, the court still reaffirmed "its prior ruling that 'all four factors enumerated in Rule 23(e)(2) and the *Grinnell* factors weigh in favor of final approval of the Settlement Agreement," except to the extent *Kurtz II* held otherwise. SPA-11.

The court noted that "Since deciding *Kurtz*, the Court of Appeals has not provided additional guidance as to the permissible allocation of recovery between class and class counsel under Rule 23(e)." SPA-16 n.12.

The court calculated a ratio of approximately 3.19 to 1 based on the $3,169,335.02 in fees awarded and the $993,958.70 actually paid to claiming class members (ignoring the $153 thousand in costs class counsel also received). The court acknowledged that *Briseño v. Henderson*, 998 F.3d 1014, 1026 (9th Cir. 2021), had described a 7:1 ratio as raising an "urgent red flag." SPA-16-17. But, on the other hand,

14

another district-court case found a 19:1 ratio did not preclude settlement approval. SPA-17 (citing *Hasemann v. Gerber Prods. Co.*, No. 15-CV-2995 (EK) (JAM), 2025 WL 2773748 (E.D.N.Y.)). Thus, it characterized the 3.19:1 ratio in this case as raising only "superficial concerns about the fairness of the Settlement" and concluded that "the Settlement is substantively fair despite the superficial concern raised by a 3:1 ratio between attorneys' fees and class recovery." SPA-17, 19.

The district court held that "Any seeming disproportionality between the attorneys' fees and total recovery is explained by the nature of this case as one involving a price-premium claim for an inexpensive consumer product." SPA-18. The court did not reconcile this holding with either its previous holding that Kimberly-Clark's willingness to make $20 million available was what made the settlement fair, nor with the scope of the release, which waived far more than just price-premium claims.

The court declined to "reopen" its earlier analysis in response to Frank renewing his earlier objections that *Kurtz II* did not reach. SPA-19.

The court reaffirmed its earlier fee analysis in reaching the same award on a lodestar basis, believing that the *Goldberger* factors were not affected by this Court's mandate. SPA-12-13.

The court issued judgment in both cases on March 19, and Frank timely appealed both judgments. SPA-21; SPA-23; A-470; A-474. This Court consolidated the two appeals.

15

## Summary of Argument

"[T]he court's role as fiduciary is primarily to ensure that the class's own agents—its class representatives and class counsel—have not sold out its interests in settling the case." *Kurtz II*, 142 F.4th at 118 (internal quotation and citation omitted).

In this settlement, the attorneys recovered over $3 million, while the class recovered less than $1 million. This result violates not only intuitive notions of justice but also the fairness requirements of Rule 23(e). The ratio of attorney benefit to class benefit exceeds the amount the Seventh Circuit called impermissibly "selfish." *Pearson v. NBTY, Inc.*, 772 F.3d 772, 787 (7th Cir. 2014); *id.* at 780 ($2.1M for attorneys, $0.86M for the class). *Kurtz II* noted that a "sufficient imbalance [can] cast doubt on the settlement's fairness." 142 F.4th at 119; *see also Moses v. New York Times Co.*, 79 F.4th 235 (2d Cir. 2023).

The problem arises because of the inherent agency problems in class-action settlements. A defendant wishes only to get out of a case as cheaply as possible, and is indifferent as to the allocation of the cost of settlement between class counsel and the class. Both class counsel and the defendant have the incentive to create the *illusion* of relief at the expense of the class to obtain settlement approval, maximize fees, and minimize the cost to the defendant. Claims-made settlements with "caps" on defendant liability can create that illusion by throttling class recovery if a district court fails to scrutinize the disproportion. And the court here

16

committed reversible error in viewing the disproportion as inevitable. *See* Section I.

The parties here structured the settlement to achieve just this result. Kimberly-Clark agreed to make "available" up to $20 million to compensate the class and to pay class counsel up to $4.1 million in fees and expenses from a separate fund. The claims process was effectively throttled, making it onerous for class members to claim just $7, with a tier capped at $50.60 for those rare consumers who saved grocery receipts or empty packaging for years.

Unsurprising to no one, the number of claims in the class of millions was dismal, with Kimberly-Clark paying less than $1 million of the illusory $20 million made "available" and the remaining $19 million never having a chance of leaving its pockets. The district court could not have "fixed" the disproportionality by reducing attorneys' fees and reallocating those funds to the class because the segregated fee structure prevented such a result where a pure common fund would not—permitting class counsel to collect over three quarters of the constructive common fund. Meanwhile, the settlement terms expanded the class from a smaller certified New York class to a nationwide class granting Kimberly-Clark a broad release of claims, including property-damage claims, over a fourteen-year period.

Worse, the terms of the award of attorneys' fees precluded a district court from correcting that upside-down ratio of fees to relief because the

settlement provided for fees to be paid from a segregated fund. That segregation unquestionably makes the class worse off, and is called a "red flag" by other appellate courts. The injury to the class from the segregated fund isn't even hypothetical: the court's $0.8 million fee reduction will go to Kimberly-Clark instead of the class. But "there is no apparent reason the class should not benefit from the excess allotted for fees." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 949 (9th Cir. 2011). And the district court erred again in considering that red flag costing the class money to be a benefit protecting the class under Rule 23(e)(2)(C)(iii). *See* Section II.A.

The district court erred because it treated the problem of "proportionality" raised by *Kurtz II* and *Moses* as "superficial." SPA-17, SPA-19. The district court correctly noted that an award that equaled over 77% of the total settlement benefit was "unreasonable," but then dropped that entire line of analysis when evaluating settlement fairness. And even after that "unreasonable" finding, the court ultimately awarded a fee that, even after a 20% reduction for certain billing practices, was triple that of the class recovery, ultimately disregarding the upside-down ratio between class and attorney benefit, relying on an incorrect district-court decision, made without adversary presentation, to approve a settlement with a much more untenable ratio. *See* Section II.B.

Public policy supports Frank's proposed rejection of the settlement by improving the deterrent value of class actions, discouraging low-merit

class actions that cause deadweight loss, and discouraging class counsels from breaching their fiduciary duty to class members. *See* Section II.C.

To be clear, Frank's appeal does not challenge the total value of the settlement under Rule 23(e)(2)(C)(i). If parties negotiating at arm's length believe the appropriate compromise of the value of litigation is about $5 million, so be it. Frank does not ask Kimberly-Clark to pay $20 million or even $6 million instead. But what class counsel may not do is structure a settlement such that they extract in fees most of the settlement value, compromising the class's claims so that over 90% (and perhaps over 99%) of the class goes unpaid, while paying themselves in full. This happened here: the attorneys will get over three times as much as the $993,958.70 scheduled to be paid to the class; Kimberly-Clark will get an $800,000 windfall at the expense of the class because of class-counsel's self-dealing with an arbitrary and unfair segregated-fee structure. Settlement approval must be reversed.

## Argument

I. **Because class-action settlements are predisposed to agency problems, courts must be wary of the allocation of a class-action settlement between the class and class counsel. The district court erred in thinking this settlement merited disregarding that allocation.**

A. **Judicial scrutiny of the actual allocation of settlement benefit protects the absent class members.**

Unlike settlements in other civil litigation in which the parties bargain away only their own rights, class-action settlements require court approval and impose on the district court exercising this function "a fiduciary responsibility to the silent class members." *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 23 (2d Cir. 1987); Fed. R. Civ. P. 23. The requirement that courts must approve class action settlements and, in doing so, consider how the settlement allocates the benefits between the class and class counsel arises from precedent, the text of Rule 23, and the practical need for courts to police abuses in class-action settlements because of inherent agency problems. Courts must act "with a jealous regard" for the rights and interests of the absent class members, *Goldberger v. Integrated Res.*, 209 F.3d 43, 53 (2d Cir. 2000) (cleaned up), because the principals—the class members releasing their claims—are absent and have no control or even input with respect to the agents— class counsel. Courts thus must act as protectors against "the danger that the parties and counsel will bargain away the interests of unnamed class

20

members in order to maximize their own." *In re Dry Max Pampers*, 724 F.3d 713, 715 (6th Cir. 2013).

Judicial oversight is necessary because "the adversarial process— or … 'hard-fought' negotiations—extends only to the amount the defendant will pay, not the manner in which that amount is allocated between the class representatives, class counsel, and unnamed class members." *Pampers*, 724 F.3d at 717. Thus, the conflict between the class and its counsel becomes most pronounced at the settlement stage of the litigation, when class counsel negotiates with the defendant and then petitions for a fee award. "[R]egardless how a total settlement package is formally structured," "every additional dollar given to class counsel means one less dollar for the class." *In re Cendant Corp. Litig.*, 264 F.3d 201, 256 (3d Cir. 2001). That's because "in negotiating a settlement, a defendant is interested only in disposing of the total claim asserted against it"; "the allocation between the class payment and the attorneys' fees is of little or no interest to the defense." *Fresno Cty. Emps. Ret. Ass'n v. Isaacson*, 925 F.3d 63, 69-70 (2d Cir. 2019) (citation modified); *see also Briseño*, 998 F.3d at 1025 ("a defendant, no matter if a class has been certified, has 'no reason to care about the allocation of its cost of settlement between class counsel and class members'" (quoting *Pearson*, 772 F.3d at 783)). As a "rational maximizer," the defendant cares only "how much the settlement is likely to cost it.'" *Briseño*, 998 F.3d at 1025.

21

"The concern is not necessarily in isolating instances of major abuse, but rather is for those situations, short of actual abuse, in which the client's interests are somewhat encroached upon by the attorney's interests." *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 216, 224 (2d Cir. 1987) (internal quotation omitted). The necessary review for district courts can be "difficult because the adversarial process is typically diluted—indeed, suspended—during fee proceedings." *Goldberger*, 209 F.3d at 52. Because of the defendant's indifference as to the allocation of settlement funds, courts must look for "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Pampers*, 724 F.3d at 718 (internal quotation omitted).

As here, the parties might structure the settlement in segregated tranches, by which the parties provide for class relief and then also establish an "artificially separate fee." *Bluetooth*, 654 F.3d at 943. In this type of settlement, any excess fees revert to the defendant, without affecting the class's direct financial stake in the request, enabling class counsel to tell the court that their fees will in no way reduce the recovery to the class members. But that is only true because of the decision to structure the settlement to withhold money that the defendant was willing to pay from the class. In reality, a separated fee fund is merely a "gimmick for defeating objectors" and insulating counsel's fee request from scrutiny. *Pearson*, 772 F.3d at 786. Because the entire settlement

22

amount comes from the same source, the constructive common fund arrangement "should not enable parties to circumvent" restrictions on excessive fees. *Bluetooth*, 654 F.3d at 943.

Given this background, courts operating on their own (and at times with the aid of public-minded objectors) must overcome the "natural temptation to approve a settlement, bless a fee award, sign a proposed order submitted by plaintiffs' counsel, and be done with the matter." *Marshall v. Deutsche Post DHL*, 2015 WL 5560541, 2015 U.S. Dist. LEXIS 125869, *2 (E.D.N.Y. Sept. 21, 2015). The problem, however, is that federal courts are endlessly busy. They are unaccustomed to having the adversarial process suspended and having to engage in inquisitorial judging, and have been "conditioned in non-class contexts to view negotiated resolutions of disputes as preferable to litigated ones." *See* Russell M. Gold, *"Clientless" Lawyers*, 92 Wash. L. Rev. 87, 116 (2017). As a result, they often defer to class counsel rather than exercise a zealous degree of oversight. Brian Wolfman, *Judges! Stop Deferring to Class Action Lawyers*, 2 U. Mich. J. L. Reform 80, 82 (2013). This happens even though the proponents bear the burden to demonstrate the settlement is fair, reasonable, and adequate under Rule 23. *Ma v. Harmless Harvest*, 2018 U.S. Dist. LEXIS 123322, 2018 WL 1702740, *4 (E.D.N.Y. Mar. 31, 2018).

Still, one would think that even the most deferential courts would raise an eyebrow if class counsel approached them with an undisguised

$4,316,624.95 common fund (fees + costs + actual benefit + incentive awards) and proposed to appropriate $3,307,666.25 in fees and expenses (77%) for themselves. This Court rejected the Ninth Circuit's 25% "benchmark" as something that, applied mechanically, would overcompensate attorneys. *Goldberger*, 209 F.3d at 51-52. The lopsided result here is several times the 25% that *Goldberger* rejected. Even "a one-third fee," while "not unheard of," is simply not the "norm in the Second Circuit." *Espinal v. Victor's Café 52nd St., Inc.*, 2019 WL 5425475, 2019 U.S. Dist. LEXIS 18364, at *6 (S.D.N.Y. Oct. 23, 2019).

**B. In the absence of this scrutiny, class counsel has little incentive not to ensure it structures a settlement to receive the lion's share of settlement value.**

"Claims-made" settlements such as this one—where class members must submit a claim form to obtain compensation—are notorious for a lop-sided result favoring attorneys over the class. Rather than make direct payment to class members, a defendant agrees to make a specified amount of money available to the class, in theory at least, but the defendant pays out only on the claims that class members file and keeps the remainder for itself. But parties often cite the amount "made available" when presenting the settlement to the district court for approval to hide the true allocation of settlement benefit as among the class and the parties. And that's what happened here: class counsel boasted about the amount purportedly made available and how hard they

worked to obtain that result, and sought to justify an outsized fee, even though class members received a small fraction of that amount.

Because any amount not paid from the fund "made available" remains with the defendant, claims-made settlements "create[] an incentive for defendants to ensure as low a claims rate as possible so as to maximize the funds that will revert." *Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1058-59 (9th Cir. 2019) (discussing perverse incentives in claims-made settlements). This incentive structure "might lead defendants to negotiate for a subpar notice process, a more tedious claims process, or restrictive claim eligibility conditions." *Id.* at 1059. It also "raise[s] the specter of their collusion, by (1) reducing the actual amount defendants are on the hook for, especially if the individual claims are relatively low-value, or the cost of claiming benefits relatively high; and (2) giving counsel an inflated common-fund value against which to base a fee motion." *Id.*

In this settlement, where class members did not receive direct notice and had to submit proof of purchase for consumable wipes products purchased over a 14-year period or else were capped at a $7 recovery, it is unsurprising that the class recovered less than $1 million of the $20 million purportedly made available. "[T]he redemption rate is notoriously low, especially when [a settlement] involves small-ticket items" and "provides for no direct notice to class members." *Briseño*, 998 F.3d at 1026 & n.3; *see also, e.g., In re Carrier iQ, Inc. Consumer Privacy Litig.*,

No. 12-md-02330, 2016 WL 4474366, at *4 (N.D. Cal. Aug. 25, 2016) (prominent settlement administrator found a median claims rate of 0.023% in settlements with publication-only notice). For years, courts have remarked upon how "especially in consumer class actions," such as this one, "the percentage of class members who file claims is often quite low." *Pearson*, 772 F.3d at 782 (discussing perverse incentives created by a claims-made settlement).

*Ex ante*, practical sense and empirical data from other cases foretold that claims without proof of purchase would be the far more common type of claim, particularly because the case involved a consumer product—flushable wipes—for which consumers rarely save their receipts for years. *See, e.g.*, *McCrary v. Elations Co.*, 2016 WL 777865, 2016 U.S. Dist. LEXIS 24050, at *15 (C.D. Cal. Feb. 25, 2016) (only 2 of 3,405 claimants submitted proof of purchase); Supp. Decl. of Jeanne C. Finegan, APR, *Kumar v. Salov N. Am. Corp.*, No. 14-cv-02411, Dkt. 164 ¶4 (N.D. Cal. May 26, 2017) (only 33 of more than 53,000 valid claims were submitted with proof of purchase); *Johnson v. Metro-Goldwyn-Mayer Studios Inc.*, 2018 WL 5013764, 2018 U.S. Dist. LEXIS 177824 at *31 (W.D. Wash. Oct. 16, 2018) (365 of 300,000 class members claimed two free James Bond movies when notice required proof of purchase); *Holt v. Foodstate, Inc.*, No. 17-cv-00637, 2020 U.S. Dist. LEXIS 7265 (D.N.H. Jan. 16, 2020) (99.5% of claimants submitted claims without proof of purchase); *Kukorinis v. Walmart, Inc.*,

No. 19-cv-20592, Dkt. 97 at 16 n.9 (S.D. Fla. Sept. 20, 2021) (0.0012% of claims were made with proof of purchase).

Even without proof-of-purchase hurdles, the claims rates in low-value consumer class settlements such as this one rarely crack the single digit percentages of the class. A settlement administration company conducted a wide-ranging survey that concluded that "settlements with little or no direct mail notice will almost always have a claims rate of less than one percent (1%)." Declaration of Deborah McComb re Settlement Claims ¶ 5, *Poertner v. The Gillette Co.*, No. 6:12-v-00803-GAP-DAB, Dkt. 156 (S.D. Fla.). Data points from other cases demonstrate this point. *See, e.g.*, *Briseño*, 998 F.3d at 1020 (claims rate of "barely more than one-half of one percent"); *Pearson*, 772 F.3d at 782 (claims rate of one-quarter of one percent); Second Expert Decl. of Prof. William B. Rubenstein, *In re Facebook Biometric Info. Privacy Litig.*, No. 15-cv-3747, Dkt. 517-2 ¶ 5 (N.D. Cal. Dec. 14, 2020) (average claims rate for classes above 2.7 million class members is less than 1.5%); *In re Livingsocial Mktg. and Sales Practices Litig.*, 298 F.R.D. 1, 19 (D.D.C. 2013) (0.25% claims rate even with direct email notice); *Lagarde v. Support.com, Inc.*, 2013 WL 1994703, 2013 U.S. Dist. LEXIS 67875, at *7 (N.D. Cal. May 13, 2013) (0.18% of class claiming $10); *In re Sony VAIO Computer Notebook Trackpad Litig.*, No. 09-cv-2109, Dkt. 378 (S.D. Cal. Aug. 7, 2017) (0.44% of class claiming either $5 or $25 without proof of purchase).

More generally, courts recognize the obvious: "experienced class action lawyers … must have known that the notice and claim forms, and the very modest monetary award that the average claimant would receive, were bound to discourage filings." *Pearson*, 772 F.3d at 783. Settling parties can fine-tune claims and notice procedures to adjust claims rates and payouts with near-actuarial certainty.

The claims process here was not designed to overcome any of the reasons that claims rates tend to be abysmal in class-action settlements. The parties provided class notice only through publication, meaning ads on websites and social media, with no direct notice to consumers known to have purchased the products at issue. The process of submitting a claim was onerous, requiring class members to obtain a customer ID, giving multiple error messages, and providing a toll-free number that no human answered. A-284-86. Meanwhile, the process of submitting a paper claim required printing and mailing a four-page paper claim form that, for the vast majority of class members without proof of purchase, would yield at most a mere $7. A-285. The settlement website also made it even more unlikely that class members would obtain the higher proof-of-purchase recovery, because it incorrectly informed class members that the only acceptable form of documentation is "itemized receipts." A-285. But the settlement allows class members to submit an actual label or bar code portion of the package as proof of their purchase. A-180.

28

With recovery capped at a meager $7 for class members who had failed to hoard receipts for consumable flushable wipes products purchased years earlier, there was little motive for someone to take the time to jump through the hoops of filing a claim.

Any claim by Kimberly-Clark that a cap greater than $7 would have resulted in a windfall for claimants is unsupported. The complaints sought more than $7 per class member and included non-compensatory damages as well. *See, e.g.*, A-121 (seeking statutory, compensatory, and punitive damages for violating New York General Business Law §§ 349 and 350). At the very minimum, the § 349 New York Business Law claims allowed class members to recover the greater of actual damages or fifty dollars. And class members are releasing property damage claims that have not been fully vetted or litigated. Those class members with proof of purchase are eligible to recover $50.60, and there is not any evidence that even a $50.60 recovery provides full and total relief. And the settlement does not allow class members to obtain this higher recovery by submitting a sworn statement or other means; rather, it unreasonably requires them to have saved years-old receipts or packing materials. In short, the parties negotiated a settlement that foreclosed *pro rata* recovery for the class, made it difficult for class members to claim even the bare minimum of $7, and also precluded any rebalancing of the fees to supplement class relief. The class recovered less than class counsel not

because this was a "price premium" case (SPA-18), but because this is what class counsel conceded to protect their fee.

The way to ameliorate this problem is to motivate counsel to seek out absent class members by tying fees and settlement approvals to the amounts the class receives. Otherwise, class counsel have no incentive to ensure that their putative clients will actually make claims and actually receive cash. In settlements where class counsel have agreed to settlement provisions that do not ensure the complete recovery benefits the class, class counsel often recover an excessive share of the settlement funds for themselves. That's exactly what we see here.

## C. The district court thus erred in treating the disproportion as inevitable.

The district court misapplied Rule 23(e)(2)(C) and erred in approving the settlement—the first time around, by ascribing a fictional value to the settlement in the illusory amount made available; this time, by holding that, well, the class wouldn't have recovered much anyway while ignoring that over 90% (and likely over 99%) of the class got nothing because the distribution was knowingly throttled. And the district court adopted a rule of decision where class counsel would get paid their lodestar whether they recovered $20 million or $200,000 for the class. So why should class counsel work to negotiate direct notice or direct payments when a burdensome claims process that harms the class gets them paid the same amount?

30

The district court rationalization of the disproportion—"Any seeming disproportionality between the attorneys' fees and total recovery is explained by the nature of this case as one involving a price-premium claim for an inexpensive consumer product" (SPA-18)—is a *non sequitur* and error for three reasons.

*First*, the low total recovery was a deliberate choice of the settling parties: class counsel agreed to a claims-made settlement instead of direct payment or *pro rata* distribution of a common fund; to publication notice without any effort to identify class members; to a burdensome multi-stage claims process; to a $7 cap on claims that would deter class members from bothering to make claims in the first place; to requiring years-old receipts to make a claim for more than $7. These were all voluntary negotiated choices to reduce the amount the class would actually recover. Different choices would have resulted in more class recovery. Class counsel is entitled to compromise the class's claims if it is in the class's best interests to do so. But the point of Rule 23(e)(2)(C)(ii) and (iii) is that class counsel is not entitled to compromise the class's claims for the benefit of class counsel.

That happened here. Fine, class counsel did not settle "quickly" "to cut a check." SPA-18. But that's necessary, rather than sufficient. The court erred in finding that class counsel did not "undervalue the class's claims in exchange for a higher attorney's fee." Kimberly-Clark was willing to pay about $5.1 million to settle the case (and, under the district

court's ruling, was only responsible for $4.3 million of that). Frank does not claim that the merits of the case meant that Kimberly-Clark had to pay so much as a penny more—but had class counsel agreed to a common fund *pro rata* distribution, or a higher claims cap, or a less burdensome claims process, or a form of direct notice, the class would have collected well over $3 million instead of under $1 million. Instead, class counsel agreed to a structure where they got much more than the class.

*Second*, the district court's statement that this case is just about a price premium is erroneous. The complaint might have just been about a price premium. But class counsel traded higher fees for a substantially broader release—covering a nationwide class where certification had been denied, and covering property-damage claims. A-180 ¶ 1.24; A-181-182 ¶¶ 1.26, 1.32; A-193-194 ¶ 7.1; *Kurtz* Dkt. 456 at PageID #19407 *ff*. Perhaps the solitary certified single-state New York class had a low ceiling of damages by itself, but once class counsel agreed to trade a higher fee for releases for the other 49 states (without any discussion of the statutory damages available in those states), fourteen years, and expensive plumbing repairs, there is no longer any reason to point to the weak possible recovery at trial.

Increasing class recovery *pro rata* wouldn't be a windfall. The complaints sought more than $7 per class member and included noncompensatory damages as well. *See, e.g.,* A-121 (seeking statutory, compensatory, and punitive damages for violating New York General

Business Law §§ 349 and 350). The § 349 claims by themselves allowed class members to recover the greater of actual damages or fifty dollars. And class members are releasing property damage claims that have not been fully vetted or litigated. A sub-$1 million recovery was hardly inevitable—not least because Kimberly-Clark demonstrated willingness to spend $5.1 million to settle the case. The Court's finding is clearly erroneous and legal error to boot.

*Third*, in its earlier ruling on settlement fairness, the district court treated Kimberly-Clark's promise to pay "up to" $20 million as so meaningful that it ascribed that value to the settlement itself. A-396. If a disproportionate actual recovery is now considered to be as inevitable as the district court claims, why are there no consequences for the settling parties for misleading the court about the value of the settlement in 2022? After all, settling parties in a class action owe the court a duty of candor because of the risk that the proceedings will be effectively *ex parte* (as they were in the *Kurtz* Costco settlement with no objectors). *Arkansas Teacher Ret. Sys. v. State St. Corp*, 25 F.4th 55, 65 (1st Cir. 2022). If $20 million was a realistic settlement recovery for the class in 2022, as implied by the court's earlier ruling, the class's $1 million recovery for the benefit of class counsel's larger fees is hardly inevitable.

The Court's finding that disproportion was unavoidable, rather than a deliberate choice of the settlement structure, is clearly erroneous and legal error to boot. As the premise for settlement approval, the error

requires vacatur of the approval. But the Court can go further, and establish "additional guidance as to the permissible allocation of recovery between class and class counsel under Rule 23(e)." SPA-16 n.12. The correct rule—including the correct rule on issues this Court declined to address in *Kurtz II*—requires rejection of this settlement under Rule 23(e) and under *Moses*.

## II.   The district court erred in approving a settlement where "the attorneys' fees arrangement shortchanges the class."

Courts are required to "'examine whether the attorneys' fees arrangement shortchanges the class.'" *Moses*, 79 F.4th at 244 (quoting *Briseño*, 998 F.3d at 1024). "The new Rule 23(e) makes clear that courts must balance the proposed award of attorney's fees vis-à-vis the relief provided for the class in determining whether the settlement is adequate for class members." *Id.* (quoting *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607 (9th Cir. 2021)) (citation modified).

The settlement was thus unfair as a matter of law because class counsel's fee award consumes over three-quarters of the total benefit, and class counsel segregated its fees so that a court could not reallocate the disproportion without rejecting the settlement. Class counsel is receiving $3.3 million, and the class less than $1 million. If the parties' settlement had created a $4.3 million common fund, it would contradict Second Circuit law to award $3.3 million of it to the attorneys at the expense of the class. *Goldberger*, 209 F.3d at 51-52 (rejecting a 25% benchmark).

34

Other circuits agree.[4] It would be perverse to permit parties to evade this rule by structuring the settlement to segregate the attorneys' fees from the class recovery—especially when that segregation unambiguously leaves the class worse off than a common fund. But that is what the district court did.

## A. The segregated fee structure is *per se* unfair to the class; the district court erred in considering it a benefit.

Unlike an all-inclusive pure common fund, the class benefits here are formally segregated from the attorneys' fees in a structure known as a "constructive common fund." *Dennis*, 697 F.3d at 862-63 (evaluating similar settlement structure). Parties may not wave away allocational issues simply by structuring the settlement as a constructive common fund with segregated fees, rather than a traditional common fund, or by asking the court to award fees using the lodestar method. *See, e.g.*, *Bluetooth*, 654 F.3d at 943; *Pampers*, 724 F.3d at 717.

---

4 *Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012) (38.9% fee would be "clearly excessive"); *Roes*, 944 F.3d at 1051 (fee award of 45% of gross cash fund is "disproportionate"); *Allen v. Bedolla*, 787 F.3d 1218, 1224 n.4 (9th Cir. 2015) (fee award that exceeds class recovery by a factor of three is disproportionate); *Pearson*, 772 F.3d at 781 (69% fee is "outlandish"); *Redman v. RadioShack Corp.*, 768 F.3d 622, 630-32 (7th Cir. 2014) (55-67% allocation is unfair); *see also Briseno*, 998 F.3d at 1026 (reversing settlement approval where attorneys received $7 million and class received less than $1 million).

35

For this reason, segregated fees (sometimes called a "kicker" because the defendant, rather than the class, will receive the benefit of any reduction in the fee request, as happened here) are considered a "red flag" against settlement approval because it is conclusive evidence that the attorneys negotiated the settlement to benefit themselves, rather than the class. *See generally Briseño*, 998 F.3d at 1026-27; *accord Pearson*, 772 F.3d at 786-87. The combination unfairly insulates the fee request from scrutiny: it is "a strategic effort to insulate a fee award from attack." Charles Silver, *Due Process and the Lodestar Method*, 74 Tulane L. Rev. 1809, 1839 (2000). A class member who objects to an excessive fee request would have to do so *pro bono*: because the fee reduction would create no benefit for the class, the class member would not be entitled to attorneys' fees for his success. And segregation has the potential to shield an excessive fee award from appellate review: an objector would not have standing to challenge the fee award if she does not also challenge the settlement approval.[5] Thus, the segregation is a "gimmick" that courts should reject as unfair. *Pearson*, 772 F.3d at 786.

---

[5] *Contrast Silverman v. Motorola, Inc.*, 739 F.3d 956, 957 (7th Cir. 2013) (no standing for objector who only challenges attorneys' fees without challenging settlement when objector cannot benefit from fee reduction) *and Glasser v. Volkswagen of Am., Inc.*, 645 F.3d 1084 (9th Cir. 2011) (same) *with Bluetooth*, 654 F.3d at 949 n.9 (objectors who challenge disproportionate fee as part of challenge to Rule 23(e) approval of $0 settlement have appellate standing).

The Ninth Circuit describes why segregated funds are unfair to class members. Here, Kimberly-Clark's waiver of opposition to the $4 million fee request "reveals the defendant's willingness to pay, but the kicker deprives the class of that full potential benefit if class counsel negotiates too much for its fees." *Bluetooth*, 654 F.3d at 949. Because class counsel agreed to segregate fees, when fees were reduced, the difference went to the defendant's coffers, rather than the class, leaving money on the table that the defendant had been willing to pay to settle the case. "[T]here is no apparent reason the class should not benefit from the excess allotted for fees." *Id*; *accord Briseño*, 998 F.3d at 1027. Thus, such reversion to the defendant has a "strong presumption of [] invalidity." *Pearson*, 772 F.3d at 786-87; *accord Eubank v. Pella Corp.*, 753 F.3d 718, 723 (7th Cir. 2014) (highlighting reversion as a "questionable provision" that should have been "deleted").

So the fee segregation and reversion is a red flag, a provision to benefit attorneys at the expense of the class. But the district court considered it a *benefit* in favor of approval, A-424, and refused to "reopen" this characterization. SPA-19. This is error. The court believed that, because of segregation, the fee award "will not affect the Class's recovery." A-424; *accord* A-425. This makes no sense economically:

> "defendants, who pay both fees and class recovery, must be expected to think of the two payments in tandem as they negotiate. A defendant's willingness to pay a high

37

> or low fee will be impacted by what it anticipates paying out to the class and vice versa."

*Kurtz II*, 142 F.4th at 120. Of course the fee award affected the class recovery. A defendant only cares about the total payment, *see* Section I.A, and the parties are able to materially influence the amount claimed by the class by how much they throttle the distribution process. *See* Section I.B.

Putting the total settlement amount in two different buckets doesn't change the underlying economics. Even if the parties negotiate the two buckets of class relief and fees separately and sequentially, either side can veto a settlement before it gets presented to the court if the second bucket negotiation does not go to their satisfaction. The settling parties are economic actors with rational expectations. Even when the negotiations over fees are severed, the parties know in advance that those negotiations are coming, that the defendants have a reservation price based on their internal valuation of the litigation, and that every dollar negotiated for the class reduces the amount the defendants are willing to pay class counsel. The overhang of the future fee negotiations necessarily infects the earlier settlement negotiations for the size of class relief.

The Ninth Circuit illustrated this last point in *Briseño*: Consider a defendant's likelihood of agreeing to two different settlement options: (1) create a $10 million fund for class members and pay $3 million in fees to class counsel for a total payout of $13 million, or (2) create a $7 million

fund and pay $4 million to class counsel for a total payout of $11 million. "A defendant would choose the second option because it would save $2 million, even though it shortchanges class members." 998 F.3d at 1025. And class counsel knows this: every dollar they negotiate for class relief is a dollar that the defendant won't be willing to pay for fees later in the negotiation. Separate buckets does not change the underlying economics of the negotiation, and the district court is wrong as a matter of economics: fees do come from the class. *Cf. Bluetooth*, 654 F.3d at 948 (separation of fee negotiations from other settlement negotiations does not demonstrate that settlement with disproportionate fee proposal is fair).

And the class was prejudiced in exactly the way *Bluetooth* anticipated. The district court reduced the Rule 23(h) request from $4.1 million to $3.3 million. The segregated fund meant that that $0.8 million that Kimberly-Clark was willing to pay to obtain a release from the class ended up as a windfall in Kimberly-Clark's pockets, instead of going to the class. Kimberly-Clark was willing to pay up to $5.1 million to settle the case. Class counsel could have negotiated a $5.1 million common fund, and instead chose to create a smaller segregated fund that saved Kimberly-Clark money, benefited class counsel, and cost the class money. How is the segregated fund not *per se* unfair under Rule 23(e)(2)(C)(iii) and *Moses*? The district court erred in treating this unnecessary and self-dealing expense to the class as a benefit in support of settlement.

**B.** *Hasemann* **was wrongly decided, and the district court erred in relying upon it.**

After briefing was decided, another Eastern District of New York court decided *Hasemann v. Gerber Products*. In *Hasemann*, the modified settlement would pay the class $588,000, but class counsel would be entitled to $11 million in fees and costs without opposition from Gerber—95% of the constructive common fund, or a 19:1 ratio of payment to attorneys versus the class.[6] The district court recognized that *Kurtz* and *Briseño* cast some "doubt on the settlement's fairness." But, after reducing the fee request to $7.3 million—a windfall of over $3 million to Gerber, and still a 12:1 ratio—*Hasemann* approved the settlement, because the few claiming class members would get a good deal, and other *Grinnell* factors supported approval. No. 15-CV-2995 (EK) (JAM), 2025 WL 2773748 (E.D.N.Y.).

This is wrong. An upside-down ratio may be appropriate if the class is fully compensated and their claims aren't being compromised. Or perhaps the class is receiving intangible retrospective injunctive relief that is difficult to measure, making a pure pecuniary comparison unjust. But throttling the distribution of relief so that only a small fraction of the class recovers (as happened in both this case and *Hasemann*) is a

---

[6] The class at first only recovered $88 thousand, but class counsel agreed to divert $500,000 of its fees to the class—showing the artificiality of the segregated fee.

compromise made by class counsel to benefit the defendant and the class counsel at the expense of the class. When that happens, it is fundamentally unfair and a breach of the attorneys' fiduciary duties to the client for the settlement to favor the attorneys at the expense of the class. Even with the fee reduction (which, because of the segregated fee structure, benefited Gerber, rather than the class), the upside-down ratio was 12:1. If a settlement compromising the class's claims is permitted to have such a ratio, it would make Rules 23(e)(2)(C)(ii) and (iii) extraneous.

*All* settlements must satisfy Rule 23(e)(2)(A); in the absence of adequate representation, the class cannot be certified. Fed. R. Civ. Proc. 23(a)(4). It is unthinkable to approve a settlement that flunks Rule 23(e)(2)(B); we are unaware of any court agreeing to approval of a settlement that wasn't found to be negotiated at arm's length. And inequitable treatment of some class members at the expense of others under Rule 23(e)(2)(D) also raises Rule 23(a)(4) and class certification concerns. *E.g.*, *In re Clearview AI, Inc. Consumer Privacy Litig.*, 2026 U.S. App. LEXIS 20406, No. 25-1673 (7th Cir. July 13, 2026). If the requirements of Rule 23(e)(2) are instead treated by courts as a multi-factor test, the effect is to make Rules 23(e)(2)(C)(ii) and (iii) the proverbial disfavored stepchildren—those "factors," but no others, can be ignored if not met. But nothing in the text of Rule 23(e)(2) gives some factors more priority than others. *E.g.*, *Roes*, 944 F.3d at 1049 & n.12.

41

And we see the district court effectively disregard the mandate: following the erroneous *Hasemann*, it called the disproportion a "superficial" concern. SPA-17, SPA-19. The proportionality requirements of Rule 23(e)(2)(C), *Pearson*, and *Briseño* are not "superficial"; they are fundamental to settlement fairness and ensuring that class counsel is not violating its fiduciary duties by putting its own interests ahead of the class. In the absence of a meaningful proportionality requirement, class counsel has no incentive to not accede to a claims process that throttles the class's recovery in exchange for higher fees in the back end of the negotiations.

The district court legally erred by relying on the erroneous *Hasemann* and failing to treat proportionality as more than a "superficial" concern.

## C. Public policy supports aggressive policing of Rule 23(e)'s proportionality requirement.

The district court thought it necessary to give class counsel a disproportionate fee and approve a settlement with a disproportionate allocation because class actions provide deterrence, but this reasoning is backwards. Allowing attorneys to profit from settlements that don't benefit their clients reduces the deterrent value of consumer class actions and has other pernicious effects as well.

First, consider that if attorneys can earn their lodestar even when their clients do not benefit, at the margin, it makes many more low-merit

42

class actions profitable. Attorneys can bring meritless cases, settle for nuisance value (an amount cheaper than the cost of defense), and profit handsomely. *E.g., In re Walgreen Co. Stockholder Litig.*, 832 F.3d 718 (7th Cir. 2016) (merger strike suits). But if settlements are required to be proportional, then class counsel must share the nuisance value of the settlement with the class, and bringing low-merit cases has a lower expected value for the attorneys, without an effect on meritorious cases where attorneys can do well by doing good. A rule that reduces meritless cases is a feature, not a bug, of the proportionality rule Frank proposes.

Second, consider that deterrence is measured by the marginal consequences for bad behavior versus good behavior. Gary S. Becker, *Crime and Punishment: An Economic Approach*, 76 J. POL. ECON. 169 (1968). If attorneys can profit by bringing barely colorable low-merit cases, it means defendants that have done nothing wrong suffer. Bad actors get sued, but so do good actors, reducing the marginal cost to being a bad actor. With attorneys making good money bringing nuisance suits, there are fewer attorneys available to do the harder work of bringing wrongdoing corporations to account. The district court's rule of compensating class counsel for their hard work on a losing case that didn't compensate the class hurts deterrence, rather than helps it.

Third, class counsels are not supposed to be bounty hunters self-deputized to correct random wrongs: they represent clients, and have fiduciary duties to the class they've chosen to represent. A rule that the

43

attorneys don't get paid unless the class does appropriately aligns incentives. The district court's rule permitting wild disproportion so long as class counsel can persuade the court that low recovery was always inevitable has two perverse effects: (a) only the most selfless attorneys will not try to structure a settlement to recover several million extra dollars for themselves; and (b) low-merit cases give attorneys more flexibility in seeking fees than meritorious cases.

Public policy supports rejecting settlements like the ones in this case, *Hasemann*, *Pearson*, and *Briseño*.

## Conclusion

For these reasons, this Court should reverse the district court's approval of the settlement.

Dated: July 17, 2026                Respectfully submitted,

                                    */s/ Theodore H. Frank*
                                    Theodore H. Frank
                                    HAMILTON LINCOLN LAW INSTITUTE
                                    CENTER FOR CLASS ACTION FAIRNESS
                                    1629 K Street, NW, Suite 300
                                    Washington, DC 20006
                                    Telephone: (703) 203-3848
                                    Email: ted.frank@hlli.org

                                    *Attorney for Objector-Appellant*
                                    *Theodore H. Frank*

## Certificate of Compliance
## with Fed. R. App. 32(a)(7)

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements:

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

This brief contains 10,133 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century Schoolbook font.

Executed on July 17, 2026.

*/s/ Theodore H. Frank*

45

## Certificate of Service

I hereby certify that on July 17, 2026, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Second Circuit using the ACMS system, which will provide notification of such filing to all who are ECF-registered filers.

*/s/ Theodore H. Frank*

# SPECIAL APPENDIX

i

**SPECIAL APPENDIX**
**TABLE OF CONTENTS**

**Page**

Memorandum and Order, filed March 12, 2026
(1:14-cv-01142-PKC-RML) Dkt. 501 ................... SPA-1

Judgment, filed March 19, 2026
(1:14-cv-01142-PKC-RML), Dkt. 502 ................. SPA-21

Judgment, filed March 19, 2026
(2:15-cv-02910-PKC-RM) Dkt. 1397 .................. SPA-23

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
D. JOSEPH KURTZ, Individually and on
Behalf of All Others Similarly Situated,

                Plaintiff,

       - against -

KIMBERLY-CLARK CORPORATION and
COSTCO WHOLESALE CORPORATION,

                Defendants.
--------------------------------------------------------x
--------------------------------------------------------x
GLADYS HONIGMAN; and D. JOSEPH
KURTZ, Individually and on Behalf of All
Others Similarly Situated,

                Plaintiffs,

       - against -

KIMBERLY-CLARK CORPORATION,

                Defendant.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
14-CV-1142 (PKC) (RML)

**MEMORANDUM & ORDER**
15-CV-2910 (PKC) (RML)

PAMELA K. CHEN, United States District Judge:

Plaintiffs D. Joseph Kurtz and Gladys Honigman, on behalf of two putative classes, brought the instant class action lawsuit against Defendants Kimberly-Clark Corporation and Costco Wholesale Corporation, alleging that Defendants falsely labeled and advertised their bathroom wipes as "flushable" and seeking damages under New York General Business Law. Before the Court is Plaintiffs' renewed motion for final approval of attorneys' fees pursuant to the class settlement agreement entered into by Plaintiffs and Defendant Kimberly-Clark Corporation, following the Second Circuit's remand of this matter. *Kurtz v. Kimberly-Clark Corp.*, 142 F.4th

SPA-1

112, 115, 121 (2d Cir. 2025).  For the reasons set forth below, Plaintiffs' renewed motion is granted in its entirety.

## BACKGROUND[1]

### I.     Procedural History

In April 2022, eight years after the lawsuits were initiated, Plaintiffs and Defendant Kimberly-Clark Corporation ("Kimberly-Clark") (together, the "Parties") entered into a settlement agreement ("Settlement") setting forth the terms and conditions for a proposed settlement and the dismissal of the instant class action lawsuits as to Kimberly-Clark.  (*See* Settlement Agreement & General Release ("Settlement Agreement"), Kurtz Dkt.[2] 432-1.)

On May 19, 2022, Plaintiffs moved for preliminary approval of the Settlement, (*see* Kurtz Dkt. 430), which the Court granted on May 19, 2022, (*see* Kurtz Dkt. 439).  On August 3, 2022, Plaintiffs moved for final approval of the Settlement and applied for attorneys' fees.  (Kurtz Dkt. 442.)  On August 16, 2022, Class member Theodore H. Frank filed an objection to the Settlement and fee application, contending that the Settlement failed to meet the fairness standard under Federal Rule of Civil Procedure ("Rule") 23(e) and that the requested fees were

---

[1] The procedural history and factual background of this litigation has been detailed extensively in various opinions by the Court.  *See Kurtz v. Kimberly-Clark Corp.*, No. 14-CV-1142 (PKC) (RML), 2024 WL 184375, at *1–2 (E.D.N.Y. Jan. 17, 2024), *vacated and remanded*, 142 F.4th 112 (2d Cir. 2025); *Kurtz v. Kimberly-Clark Corp.*, 414 F. Supp. 3d 317, 321–30 (E.D.N.Y. 2019), *aff'd in part, rev'd in part and remanded sub nom. Kurtz v. Costco Wholesale Corp.*, 818 F. App'x 57 (2d Cir. 2020); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 496–97 (E.D.N.Y. 2017).  Thus, the Court recounts here only the background relevant to this decision.

[2] Citations to the "Kurtz Dkt." and "Kurtz Min. Entry" refer to the docket entries in *Kurtz v. Kimberly-Clark Corp.*, No. 14-CV-1142 (PKC) (RML).  Several docket entries are included in both the docket for *Kurtz v. Kimberly-Clark Corp.*, No. 14-CV-1142 (PKC) (RML) and *Honigman v. Kimberly-Clark Corp.*, No. 15-CV-2910 (PKC) (RML).  In the interest of brevity and clarity, the Court herein cites only to the entries in the *Kurtz* action.  Unless otherwise noted, the filings are equally relevant to the *Honigman* action.

SPA-2

unreasonable.  (*See* Kurtz Dkt. 446.)  The Court held two settlement approval hearings thereafter, (*see* 09/07/2022 Kurtz Min. Entry; 11/07/2022 Kurtz Min. Entry), and, on June 12, 2023, approved the Settlement, certified the settlement class, and scheduled a hearing on the fees for the Class's attorneys ("Class Counsel"), (Mem. & Order, Kurtz Dkt. 471, at 30).

On September 13, 2023, the Court informed the Parties that it would discuss the impact of the Second Circuit's decision in *Moses v. N.Y. Times Co.*, 79 F.4th 235 (2d Cir. 2023) on the previously approved Settlement at a new hearing on Class Counsel's fees.  (09/13/2023 Dkt. Order.)  On September 19, 2023, the Court held the fees hearing, (09/19/2023 Kurtz Min. Entry), and on January 17, 2024, the Court granted final approval in part and denied it in part, approving all of the Settlement's terms, except that the Court imposed an across-the-board 20% reduction to Class Counsel's fees, reducing them to $3,169,335.02.  *See Kurtz*, 2024 WL 184375, at *16.

Objector Frank appealed the Court's amended final approval and, on July 1, 2025, the Second Circuit vacated the Court's approval and remanded for review consistent with the Circuit's decision.  *See Kurtz*, 142 F.4th at 115–16.  On August 22, 2025, Plaintiffs renewed their motion for final approval of the Settlement.  (*See* Pls.' Renewed Mot. for Final Approval, Kurtz Dkt. 494; Pls.' Mem. in Supp. Mot. for Final Approval ("Pls.' Mem."), Kurtz Dkt. 495.)  Frank and another Class member, Shiyang Huang (together, the "Objectors"), filed objections on September 5, 2025, and September 21, 2025, respectively.  (*See* Obj. of Theodore H. Frank ("Frank Obj."), Kurtz Dkt. 496; Obj. of Shiyang Huang ("Huang Obj."), Kurtz Dkt. 497.)  Kimberly-Clark filed a memorandum in support of final approval of the Settlement on October 6, 2025.  (*See* Kimberly-Clark's Br. in Resp. to Frank Obj. ("Kimberly-Clark Br."), Kurtz Dkt. 499.)

SPA-3

## II.     Prior Settlement Approval

### A.     Settlement Terms

The Settlement provided that Kimberly-Clark would pay up to $20 million in compensation to the Class, generally defined as "all individuals over the age of 18 who purchased [its flushable wipes products] not for the purpose of resale" between 2008 and 2022.  (Settlement Agreement, Kurtz Dkt. 432-1, ¶¶ 1.32, 1.35, 2.5.)  Class members who provided proof of purchase could claim $1.10 per package of wipes purchased, for a maximum of 46 packages, or $50.60 in total per any one household.  (*Id.* ¶ 2.4.)  Class members without proof of purchase could claim $0.70 per package, for a maximum of 10 packages, or $7.00 in total.  (*Id.*)  Kimberly-Clark also agreed to pay up to $4.1 million to Class Counsel for attorney's fees and expenses, separate from the $20 million for class recovery.  (*Id.* ¶ 6.1.)  In other words, the attorney's fees and class recovery funds were "separately funded." *Kurtz*, 142 F.4th at 120.

At the time Plaintiffs moved for final approval of the Settlement, the total value of the compensation to the Class was $993,958.70. *Kurtz*, 2024 WL 184375, at *12.  The unpaid funds, or roughly $19 million, was to revert to Kimberly-Clark. *Id.*  Additionally, Class Counsel sought roughly $3.9 million in attorneys' fees, roughly $138,000 in litigation expenses and charges, and $15,000 in incentive awards to the named Plaintiffs. *Id.*

### B.     Rule 23(e)(2) and *Grinnell* Factors

In the 2024 decision granting final approval, the Court first revisited its prior review[3] of the Settlement in light of the *Moses* decision and found that the Rule 23(e)(2)(C)–(D) and *Grinnell*

---

[3] The Court's prior review occurred on June 12, 2023, following the second settlement approval hearing, which was before *Moses* was decided.  (*See* Mem. & Order, Kurtz Dkt. 471.)

SPA-4

factors[4] "weigh[ed] in favor of finding that the Settlement [was] substantively fair and warrant[ed] final approval, subject to [a] reduction of the requested attorneys' fees." *Id.* at *7. Relevant here, the Court determined whether the relief was adequate by looking to "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). With regard to the first and second factors, "the Court d[id] not revisit [its prior] analysis and simply affirm[ed] its prior finding that these factors weigh in favor of final approval." *See id.* With regard to the third factor, the Court found that because the attorneys' fees were funded separately from the settlement benefits, "the attorneys' fee award will not affect the Class's recovery." *Id.* at *8. Therefore, the Court found, the Class's interests were adequately protected, and the payment timing provision for the attorneys' fees did not result in "any unfairness to the Class Members." *Id.* at *8. The fourth factor was not at issue and, turning to Rule 23(e)(2)(D), the Court found that the requested incentive awards for the named plaintiffs were "reasonable in light of the circumstances of this case." *Id.* at *8–9. Finally, the Court reaffirmed its prior conclusion that the remaining *Grinnell* factors support final approval of the Settlement. *Id.* at *10.

---

[4] The "*Grinnell* factors" refers to the nine factors set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

SPA-5

### C.    Class Counsel Fees

#### 1.    Percentage-Based Review

In reviewing the attorneys' fees requested by Class Counsel under Rule 23(h) and the *Goldberger* factors,[5] the Court started by recognizing that courts in this circuit "are divided between the lodestar and the percentage-of-fund method" as the better approach to determining whether attorneys' fees are reasonable in a "claims-made settlement" like the one in this case. *See id.* Looking first at a potential analysis under the percentage-of-fund method,[6] the Court found that there was "a huge disparity between the benefits that will actually be achieved by the Class Members and the amount of funds that will revert to the Defendant" and, thus, the "unclaimed funds should not be used when assessing the fee percentage." *Id.* at \*12. The Court calculated the fee percentage to be "77.5% of the Settlement's total value,"[7] and found that amount to be "unreasonable under the circumstances." *Id.*

---

[5] The "*Goldberger* factors" refers to the six factors set out in *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000), that the Court must consider in assessing the reasonableness of attorneys' fees in class actions. Although the Court did not explicitly cite to Rule 23(h) in its analysis of the attorneys' fees, *see Kurtz*, 2024 WL 184375, at \*10–18, the Court discussed Rule 23(h) and the *Goldberger* factors in setting out the legal standard for its analysis, *see id.* at \*3–4.

[6] As the Court explained, "[u]nder the percentage method, the court calculates the fee award as some percentage of the funds made available to the Settlement Class." *Kurtz*, 2024 WL 184375, at \*11 (citation omitted). The Court determined that the allocation of fees by percentage should not be based on the unpaid funds that would revert back to Kimberly-Clark. *Id.* at \*11–12.

[7] To arrive at the "total value" of the Settlement, the Court added together $993,958.70 in "actual monetary benefits" that the Class would receive under the Settlement; $3,961,668.77 in attorneys' fees requested by Class Counsel; $138,331.23 in litigation expenses; and $15,000 in incentive awards for the named Plaintiffs. *Id.* at \*12. The Court then found that "[a]s such, under the percentage-of-the-fund method, the total value of the Settlement is $5,108,958.70, compared to $20 million, the total amount of funds made available under the Settlement," and that "the requested fee award [was] approximately 77.5% of the Settlement's total value." *Id.*

SPA-6

However, the Court also rejected Objector Frank's invitation to reduce the fees to a 25% benchmark. *See id.* Such a low award would "not give due credit for [Class Counsel's] efforts or the results achieved in this case." *Id.* (quoting *Hart v. BHH, LLC*, No. 15-CV-4804 (WHP), 2020 WL 5645984, at *9 (S.D.N.Y. Sep. 22, 2020)). Instead, given the "eight years of intensive litigation, which entailed substantial discovery, motion practice, and two appeals to the Second Circuit," and the likelihood that "a low 'award may disincentivize some plaintiffs' attorneys' in pursuing cases like this one in the future," the Court found that "the percentage of the fund does not appear to be a useful metric" and that, "'[d]ue to the atypical structure of the [S]ettlement, lodestar is a more accurate measure of attorneys' fees,' and should be applied here." *Id.* (alterations in original) (quoting *Hart*, 2020 WL 5645984, at *9).

### 2. Lodestar-Based Review

Under the lodestar method, the Court "scrutinize[d] the fee petition to ascertain the number of hours reasonably billed to the class and then multiplie[d] that figure by an appropriate hourly rate." *Id.* at *12 (quoting *Goldberger*, 209 F.3d at 47). Because of factors including high partner, associate, and other legal personnel billing rates; partner-heavy billing; vagueness in the timekeeping; block billing; and the billing of a summer associate, the Court "exercise[d] its informed discretion to impose an across-the-board reduction of 20% to Class Counsel's fee application," and found $3,169,335.02 to be a reasonable fee for Class Counsel. *See id.* at *12–16.

Finally, the Court reviewed the lowered fee against the six *Goldberger* factors and found that they "weigh[ed] in favor of approving the adjusted attorneys' fee award." *See id.* at *16–18. The Court found that: (a) "Class Counsel expended significant time, resources, and effort in successfully representing the Class," which was "necessary and reasonable for complex class actions of this type"; (b) the magnitude and complexities of litigation weighed in favor of approval;

7

SPA-7

(c) Plaintiffs would encounter substantial litigation risks at trial because of the complexities of the case; (d) Class Counsel achieved a "favorable result" against a "sophisticated company represented by highly capable counsel"; (e) the adjusted attorneys' fee award was "appropriate and [did] not constitute a windfall to Class Counsel"; and (f) the adjusted award was "reasonable in light of the need to incentivize similarly experienced attorneys to take on the risk of litigation to police valuable policy goals and the fact that Plaintiffs were unlikely to pursue their claims individually due to the burden of litigation, balanced against the need for moderation given Plaintiffs' lack of incentive to oppose Class Counsel's fee application." *Id.* (citations omitted).

Accordingly, the Court approved the adjusted award. *See id.* at *18.

### III.    Second Circuit's Decision

On appeal, the Second Circuit vacated the Court's decision. *See Kurtz*, 142 F.4th at 115, 121. The Circuit found that the Court "erred when it applied Rule 23(e)" without engaging in a proportionality analysis—i.e, "considering the allocation of recovery between the class and class counsel." *Id.* at 120. The Circuit noted that the Court had considered the "segregation of the fee funds from the class recovery funds" under Rule 23(e), reasoning that "the size of the fee award cannot impact class relief." *Id.* (citing *Kurtz*, 2024 WL 184375, at *8). However, the Circuit explained, "formal segregation tells [a court] little of the practical reality of the settlement negotiations." *Id.* Although the funds' separation "may be a relevant consideration in assessing a settlement's fairness, it is not a replacement for the proportionality analysis," and "'class recovery and the agreement on attorneys' fees should be viewed as a package deal' even when the two are structurally segregated." *Id.* (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948–49 (9th Cir. 2011)).

The Circuit also noted that the Court had analyzed the allocation of recovery between the Class and Class Counsel in its Rule 23(h) analysis. *See id.* Nonetheless, the Circuit reasoned that

SPA-8

"further analysis was needed under Rule 23(e)." *See id.* While "both [Rule 23(e) and Rule 23(h)] ask courts to weigh class recovery against attorney's fees," they are "distinct rules with distinct purposes," and thus "Rule 23(e) requires its own separate analysis of fees in relation to class relief, regardless of how the court conducts its Rule 23(h) inquiry." *Id.* at 121.

Ultimately, however, the Circuit offered "no opinion as to whether the settlement in this instant case is fair under Rule 23(e) or not." *Id.*

## LEGAL STANDARDS

### I.    Settlement Approval under Rule 23(e)

#### A.    Generally

Under Rule 23(e)(2), a district court may approve a class action settlement only upon "finding that it is fair, reasonable, and adequate." *Moses*, 79 F.4th at 242 (quoting Fed. R. Civ. P. 23(e)(2)). To make that determination, a court should expressly evaluate four "primary procedural considerations and substantive qualities that should always matter" in its "holistic[]" review of a proposed settlement. *Id.* at 242–43 (quoting Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment (the "2018 Advisory Note")). These four considerations include whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

"The first two factors are procedural in nature," *Moses*, 79 F.4th at 242, and "examine 'the conduct of the litigation and of the negotiations leading up to the proposed settlement.'" *In re*

9

SPA-9

*Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) (quoting 2018 Advisory Note). The latter two factors "guide the substantive review of a proposed settlement," *Moses*, 79 F.4th at 243, in assessing "[t]he relief that the settlement is expected to provide to class members," *In re Payment Card*, 330 F.R.D. at 29 (alteration in original) (quoting 2018 Advisory Note).

Specifically, in evaluating the substantive fairness of a proposed settlement, a court must expressly consider the "two core factors" under Rule 23(e)(2)(C)–(D): "the adequacy of relief provided to a class and the equitable treatment of class members." *Moses*, 79 F.4th at 244. Such evaluation must be conducted in tandem with reviewing the appropriateness of the proposed attorneys' fees and incentive awards encompassed in the settlement agreement. *Id.* Importantly, "the revised Rule 23(e)(2) does not displace" the *Grinnell* factors, "which remain a useful framework for considering the substantive fairness of a settlement." *Id.* at 243.

**B.     Attorneys' Fees Relative to Class Recovery**

As outlined in the Circuit's decision, Rule 23(e) also requires "courts to compare the proportion of the total recovery going to attorney's fees with the proportion going to the class, and to consider whether that comparison reveals a sufficient imbalance as to cast doubt on the settlement's fairness." *Kurtz*, 142 F.4th at 118–19. Courts must do so "regardless of whether a settlement is structured as two separate funds." *Id.* at 117. This evaluation allows the courts to ensure that class counsel does not "undervalue the class's claims in exchange for a higher attorney's fee, or in order to collect a fee more quickly"—"[o]ne of the major risks of class action settlements." *Id.* at 118. Nonetheless, "[s]uccessful class counsel should certainly be compensated." *Id.* Rule 23(e)'s comparative inquiry is also distinct from a Rule 23(h) inquiry into counsel's success, as the former focuses on what the proportion reveals about the adequacy of class relief. *See id.* at 121.

10

SPA-10

## II.   Law of the Case and Mandate Rule

The "law of the case" doctrine "counsels a court against revisiting its prior rulings in subsequent stages of the same case absent 'cogent' and 'compelling' reasons such as 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008) (quoting *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)).  In the absence of an "intervening ruling of a higher court, . . . when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case."  *Callahan v. Cnty. of Suffolk*, 96 F.4th 362, 367 n.6 (2d Cir. 2024) (quoting *Prisco v. A & D Carting Corp.*, 168 F.3d 593, 607 (2d Cir. 1999)).

"[W]here a case has been decided by an appellate court and remanded," however, "the court to which it is remanded must proceed in accordance with the mandate and such law of the case as established by the appellate court."  *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 175 (2d Cir. 2014) (quoting *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004)); *see Callahan*, 96 F.4th at 367 (noting that a district court "has no discretion in carrying out the mandate." (quoting *Puricelli v. Argentina*, 797 F.3d 213, 218 (2d Cir. 2015))).  A court must consider "both the express terms and broader spirit of the mandate to ensure that its terms have been 'scrupulously and fully carried out.'"  *Puricelli*, 797 F.3d at 218 (quoting *Ginett v. Comput. Task Grp., Inc.*, 11 F.3d 359, 361 (2d Cir. 1993)).  Still, a "mandate is controlling only as to matters within its compass."  *Fezzani v. Dweck*, No. 24-2478, 2025 WL 3061340, at *2 (2d Cir. Nov. 3, 2025) (summary order) (quoting *In re Coudert Bros. LLP*, 809 F.3d 94, 98 (2d Cir. 2015)).

11

SPA-11

**DISCUSSION**

**I.      Scope of the Mandate**

As a starting point, the Court does not read the Circuit's decision to vacate the Court's rulings on the Settlement's terms outside of Rule 23(e).  In describing the reasoning for its decision, the Circuit specifically stated that it vacated the Court's order and judgment approving the Settlement only "because [the Court] did not adequately consider the allocation of recovery between attorney's fees and class compensation in its Rule 23(e) discussion." *Kurtz*, 142 F.4th at 115.  The Circuit also discussed the Court's Rule 23(h) analysis, *see id.* at 120–21, but it clearly stated that the question of whether the Court's award of roughly $3.1 million as fees to Class Counsel satisfied Rule 23(h) was not before it on appeal. *See id.* at 116.  Finally, the panel declined to "reach the question whether the [S]ettlement . . . was necessarily improper." *Id.* at 115; *see id.* at 121 ("To be clear: we offer no opinion as to whether the settlement in this instant case is fair under Rule 23(e) or not.  That decision remains within the district court's discretion.").

Similarly, the Court also does not understand the mandate's text and broader spirit to preclude reliance on the Court's prior conclusions as to whether other Rule 23(e) elements, as well as the *Grinnell* and *Goldberger* factors, weigh in favor or against approval of the Settlement.  As the Circuit put it, "the impact of attorney's fees is just one of multiple factors detailed in Rule 23(e)." 142 F.4th at 121.  Additionally, beyond the mandate, the Objectors identify no "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice," *Ali*, 529 F.3d at 490 (quoting *Tenzer*, 213 F.3d at 39).  Accordingly, the Court reaffirms its prior ruling that "all four factors enumerated in Rule 23(e)(2) and the *Grinnell* factors weigh in favor of final approval of the Settlement Agreement," *Kurtz*, 2024 WL 184375, at *10; (*see* Mem. & Order, Kurtz Dkt. 471, at 22–26, 28–29), except to the extent affected by the Court's reconsideration of its prior Rule 23(e) conclusions in light of the mandate.  The

12

SPA-12

Court also reaffirms that the *Goldberger* factors, which already account for a comparison between the requested fees and the total value of the Settlement, generally favor approval of the Settlement. *See Kurtz*, 2024 WL 18437, at *16–17.

## II.   The Appropriate Benchmark for the Proportionality Analysis

The Court now turns to the issue on remand: the fairness of the settlement as measured, in part, by the Rule 23(e) proportionality analysis, i.e., the "allocation of recovery between the class and class counsel," *Kurtz*, 142 F.4th at 120.

As the Circuit noted, "a proportionality analysis comparing fees and class recovery raises the question: fees in proportion to exactly what 'class recovery'?" *Id.* at 119.  The Circuit found it to be a "fact-bound question that is best left to the district court's discretion." *Id.*  With respect to this analysis, "[d]ifferent settlement structures, different rates of actual recovery by the class, and different treatments of unclaimed funds might lead a district court to conclude that comparison [of attorneys' fees] to the actual, to the hypothetical, or to some predicted class recovery is most suitable." *Id.*  Although the decision of which benchmark to use is left to the district court, the Circuit offered certain guideposts based on ensuring the adequacy of relief to class members: "at one extreme, unduly complicated claim procedures combined with abysmal claim rates would weigh in favor of using actual class recovery as the comparator.  On the other hand, if a settlement is structured so that unclaimed funds did not revert to the defendant, then it might make more sense to compare fees to the hypothetical maximum class recovery." *Id.*

Plaintiffs do not argue for any particular measure of "class recovery," stating that "regardless of which benchmark the Court chooses to use for its comparative analysis, the proportion of the recovery allocated to fees in the Settlement undoubtedly does not raise questions about the adequacy of Class relief obtained for Settlement Class Members." (Pls.' Mem., Kurtz Dkt. 495, at 2, 17.)  Objector Frank, by contrast, maintains that the Court's decision should turn

solely on the "true class benefit"—the "less than $1 million allocated to the class." (Frank Obj., Kurtz Dkt. 496, at 12, 17–18.)

Here, the Court finds that the proper measure of class recovery is the actual monetary benefits that the Class will receive—in this case, $993,958.70. The Court's reasoning for what best measures the "adequacy of class relief" of the Settlement reflects in part its thinking about the measure of "attorney success" under Rule 23(h).[8] The unpaid funds, about 95% of the "theoretical maximum," would revert to Defendant, and thus remain "purely hypothetical," while "dwarf[ing] any real benefit the class receives." *Kurtz*, 2024 WL 184375, at *12 (quoting *Hart*, 2020 WL 5645984, at *8).

This conclusion is supported by the guideposts provided by the Second Circuit. Whereas this case does not involve "unduly complicated claim procedures" or "abysmal claim rates," *see Kurtz*, 142 F.4th at 119, the unclaimed funds revert to Kimberly-Clark and the roughly 5% rate of the maximum claims materializing suggests a relatively low claim rate, both elements which weigh in favor of using the value of the actual claims to determine the appropriate amount of the fees to be awarded to Class counsel. *See id.* ("Different settlement structures, different rates of actual recovery by the class, and different treatments of unclaimed funds all might lead a district court to conclude that comparison to the actual, to the hypothetical, or to some predicted class recovery is most suitable."); *see also Kurtz*, 2024 WL 184375, at *12 (noting that "the relief actually delivered to the class can be a significant factor in determining the appropriate fee award" (citing *Moses*, 79 F.4th at 244)); *Hasemann v. Gerber Prods. Co.*, No. 15-CV-2995 (EK) (JAM), 2025 WL 2773748,

---

[8] Although the mandate maintains that a Rule 23(h) and a Rule 23(e) are "separate," the Circuit acknowledged that their "examination may overlap." *Kurtz*, 142 F.4th at 121. Here, the Court relies on its evaluation of Rule 23(h)'s measurement of "attorney success" only insofar as it overlaps with the Rule 23(e) inquiry into "adequacy of class relief." *See id.*

14

at *4 (E.D.N.Y. Sep. 29, 2025) (finding actual recovery to be the appropriate benchmark given the *Kurtz* guidance where claim rates were low, unclaimed funds reverted to the defendant, and higher recovery required proof of purchase for low-dollar purchase over the years).

It could certainly be the case that, in a claims-made Settlement like this one, plaintiffs' counsel might forego some amount of fees to secure a higher cap on claims (and vice-versa). As the Circuit noted in *Kurtz*, "[a]ttorney's fees and class recovery are inevitably intertwined: parties often negotiate the two simultaneously, and defendants, who pay both fees and class recovery, must be expected to think of the two payments in tandem as they negotiate." 142 F.4th at 120. But attorneys' fees and claims cap are only two parts of a settlement. For instance, relevant as well is the predicted amount of claims, which itself depends in part on the cap on any given individual's claim, the necessary proof to recover, the definition of what constitutes the class, and the extent of outreach to class members. Without more information on the negotiation of these other factors, the Court is unable to conclude that the hypothetical maximum captures a benefit for the class that is relevant to determining the appropriate amount of Class Counsel's fees.[9] In other words, Plaintiffs have not advanced sufficient evidence for the Court to conclude, without substantial speculation, that Class Counsel's fees would have been higher had the cap on total claims been lower (and the relief less adequate). In contrast, the actual recovery value—the actual money the Class will receive—provides a tangible and direct measure of an undeniable benefit conferred to the Class.[10]

---

[9] The Court considers the hypothetical maximum and the actual claims as the only two values from which the Court must choose because neither party has advanced a "predicted class recovery" or sufficient data to calculate one. *See Kurtz*, 142 F.4th at 119.

[10] Kimberly-Clark has also filed a brief stating in part that "[t]his Settlement was negotiated and agreed upon in light of the parties' knowledge of the outcomes in similar class settlements involving other companies' flushable wipes[,] . . . Kimberly-Clark's own then-recent experience in class action settlements, and the eight years Plaintiffs and Kimberly-Clark spent intensely

15

SPA-15

### III.    Fairness Reassessment

Having determined the appropriate benchmark for the Rule 23(e) proportionality analysis, the Court now turns to whether the proportion of attorneys' fees to class recovery, roughly 3:1,[11] "cast[s] doubt on the settlement's fairness." *See Kurtz*, 142 F.4th at 119.

In evaluating proportionality, "[t]he [C]ourt's role as fiduciary is primarily to ensure that the class's own agents—its class representatives and class counsel—have not sold out its interests in settling the case." *Id.* at 118 (quoting 4 Newberg and Rubenstein on Class Actions § 13:40). And, as discussed, while "[s]uccessful class counsel should certainly be compensated," the Court must ensure that "unscrupulous counsel" cannot "quickly settl[e] a class's claim to cut a check." *Id.* (quoting *Moses*, 79 F.4th at 244). Still, "the impact of attorney's fees on class relief is just one of multiple factors detailed in Rule 23(e)." *Id.* at 121. This factor is not "singularly dispositive" and the Court "may again conclude that this settlement is fair and approve it." *Id.*

Courts have diverged on what impact an attorneys' fees award exceeding actual recovery should have on the overall fairness of a settlement.[12] *Briseño v. Henderson*, to which *Kurtz* cited

---

litigating this action." (Kimberly-Clark Br., Dkt. 499, at 6.) Whereas this statement does not change the Court's conclusion, as it does not establish a direct relationship between the claims cap and the attorneys' fees, the Court agrees with Kimberly-Clark that Objector Frank's suggestions and "assertions that . . . the parties intentionally structured the Settlement as to minimize the number of claims" find no support in the record. (*Id.* at 6–7.)

[11] Here, the exact ratio between the actual claims and the attorneys' fees is roughly 3.19:1, or $3,169,335.02 divided by $993,958.70. The Court could also consider the costs, expenses, and incentive awards as part of the class recovery to be compared to the attorneys' fees, which would yield a ratio of 2.76:1, or $3,169,335.02 divided by the sum of the actual claims ($993,958.70), named plaintiffs' incentives ($15,000), and costs and expenses ($138,331.23). The Court need not choose between the two because its decision would be same irrespective of which measure it used. For simplicity, and as a way to capture this range, the Court uses the approximation of "3:1" in its discussion.

[12] Since deciding *Kurtz*, the Court of Appeals has not provided additional guidance as to the permissible allocation of recovery between class and class counsel under Rule 23(e). *C.K. through P.K. v. McDonald*, No. 2:22-CV-1791 (NJC) (JMW), 2026 WL 220984, at *15 (E.D.N.Y.

16

SPA-16

approvingly, found that a 7:1 ratio of attorneys' fees to a class's actual recovery "raise[d] an urgent red flag." 998 F.3d 1014, 1026 (9th Cir. 2021). In turn, *Hasemann*, a decision in this district issued soon after *Kurtz* was decided, found that a 19:1 proportion of the same measure "d[id] cast some 'doubt on the settlement's fairness,'" but it did not preclude settlement approval. *See* 2025 WL 2773748, at *5 (quoting *Kurtz*, 142 F.4th at 119); *see also Everetts v. Pers. Touch Holding Corp.*, No. 21-CV-2061 (JMA) (ARL), 2025 WL 942800, at *3–4 (E.D.N.Y. Mar. 28, 2025) (approving roughly $300,000 in attorneys' fees where class received, *inter alia*, $98,284.88 in monetary relief and $50,000 in credit monitoring services); *In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*, 333 F.R.D. 364, 385–86 (E.D. Pa. 2019) (approving roughly $1.1 million in attorneys' fees where class received $211,255 in monetary relief and $286,986.50 in in-kind relief).[13]

Although the 3:1 ratio in this case raises superficial concerns about the fairness of the Settlement, under the circumstances of this case, and in light of other Rule 23(e)(2)(C) factors, the Court concludes that Rule 23(e)'s factors weigh in favor of approving the Settlement and attorneys' fees of $3,169,335.02. Here, the Court reaffirms that all other aspects of Rule 23(C)(2)(i) and (ii) favor final approval, (*see* Mem. & Order, Kurtz Dkt. 471, at 22–26, 28–29), and that Class Counsel has "expended significant time, resources, and effort in successfully

---

Jan. 15, 2026) ("Since the Second Circuit decided *Kurtz* around six months ago, it has not provided additional guidance regarding the permissible allocation of recovery between the class and class counsel under Rule 23(e)." (citing *Hasemann*, 2025 WL 2773748, at *4)).

[13] Courts in this district have also approved awards to class counsel upwards of $1 million where the class's recovery was substantially non-monetary. *See C.K. through P.K.*, 2026 WL 220984, at *16, *18 (finding that $5.3 million for attorneys' fees, costs, and expenses "raises no concern about any imbalance"); *Engesser v. McDonald*, No. 25-CV-1689 (FB) (LKE), 2025 WL 2552602, at *9 (E.D.N.Y. Aug. 12, 2025) (finding $1,052,644 for attorneys' costs and fees "fair and reasonable").

SPA-17

representing the Class." *Kurtz*, 2024 WL 184375, at *7, *16.  Over the course of eight years, Class Counsel has engaged in "intensive litigation, entailing substantial discovery, motion practice, two appeals to the Second Circuit, class certification, and settlement negotiations." *Id.* at *16 (citation omitted).  The case was "complex[]" and going to trial would have been a "substantial litigation risk." *Id.* at *17.  "That Class Counsel was able to negotiate this Settlement against a sophisticated company represented by highly capable counsel, while avoiding adverse rulings that could have reduced Plaintiffs' negotiating leverage, is a testament to the skill displayed by Class Counsel." *Id.* (citation omitted).  Finally, settlement negotiations were extensive.  (*See* Serra Decl., Kurtz Dkt. 444, ¶¶ 27–29.)  Any seeming disproportionality between the attorneys' fees and total recovery is explained by the nature of this case as one involving a price-premium claim for an inexpensive consumer product, i.e., flushable wipes; thus, despite Class Counsel's significant expenditure of time and resources over the course of eight years, the potential recovery for Class Members was inherently and unavoidably limited.

It is thus clear that the attorneys' fees reflect this extensive work, that Class Counsel has not "undervalue[d] the class's claims in exchange for a higher attorney's fee, or in order to collect a fee more quickly," and that the instant case is not one where "unscrupulous counsel [seeks to] quickly settl[e] a class's claims to cut a check." *See Kurtz*, 142 F.4th at 118 (citations omitted); *see also Hasemann*, 2025 WL 2773748, at *5 (approving settlement with 19:1 ratio and finding that "[g]iven the long history of th[e] case, class counsel ha[d] not 'quickly settl[ed] a class's claim to cut a check'" (quoting *Moses*, 79 F.4th at 244)); *C.K. through P.K*, 2026 WL 220984, at *17 (approving $5.3 million for attorneys' fees, costs, and expenses in part due to settlement being "the result of hard work by Class Counsel to secure significant, meaningful, and immediate relief for the Classes").  Viewing the fee award and its proportion to the class relief in tandem with all other

SPA-18

aspects of the Settlement, the Court finds that Rule 23(e) is satisfied and that the *Grinnell* and *Goldberger* factors continue to weigh in favor of approving the Settlement.

Objector Frank attempts to rely on the mandate to re-open review of several aspects of the Settlement that the Court previously found favored approval, including the use of separate funds for attorneys' fees and class recovery, the sufficiency of notice, and the claims submissions process. (*See* Frank Obj., Kurtz Dkt. 496, at 15–17; *see also* Huang Obj., Kurtz Dkt. 497, at 1 (raising similar objection to the claim process).) For the reasons discussed above, the Court finds that its prior conclusions as to these factors do not need revisiting in light of the proportionality analysis and in the absence of any new material evidence, clear error, or manifest injustice.

Ultimately, Objector Frank would still have the Court declare that the 3:1 ratio makes the Settlement unreasonable and set Class Counsel's fees to no more than 25% of the claims made, or roughly $250,000. (*See* Frank Obj., Kurtz Dkt. 496, at 18.) Objector Huang argues for a similar result. (*See* Huang Obj., Kurtz Dkt. 497, at 2.) But as the Court noted, the ratio is only one factor in the Court's consideration, and such an award would "not give due credit for [Class Counsel's] efforts or the results achieved in this case," *Kurtz*, 2024 WL 184375, at \*12 (quoting *Hart*, 2020 WL 5645984, at \*9), and would be patently and woefully inadequate.

Accordingly, the Settlement is substantively fair despite the superficial concern raised by a 3:1 ratio between attorneys' fees and class recovery. Thus, the Court reaffirms its prior ruling that Class Counsel's fees, as previously modified to $3,169,335.02, is reasonable.

SPA-19

**CONCLUSION**

For the reasons stated above, the Court again finds that the Settlement Agreement in these matters is substantively fair, reasonable, and adequate. The Court hereby reaffirms its prior decision finally approving the Settlement Agreement and certifying the Settlement Class. The Court approves and awards: (1) attorneys' fees in the amount of $3,169,335.02 to Class Counsel, (2) litigation expenses and charges in the amount of $138,331.23 to Class Counsel, and (3) class representative incentive awards of $10,000 and $5,000 to Kurtz and Honigman, respectively. These payments shall be paid by Defendant to Plaintiffs and Class Counsel in accordance with the terms of the Settlement Agreement.

SO ORDERED.

/s/ *Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 12, 2026
        Brooklyn, New York

SPA-20

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

D. JOSEPH KURTZ, Individually
and on Behalf of All Others
Similarly Situated,                                              JUDGMENT

                              Plaintiffs,

           v.                                                    14-CV-1142 (PKC) (RML)

KIMBERLY-CLARK CORPORATION
and COSTCO WHOLESALE
CORPORATION,

                              Defendants.
--------------------------------------------------------------X

GLADYS HONIGMAN; and
D. JOSEPH KURTZ, Individually
and on Behalf of All Others
Similarly Situated,                                              15-CV-2910 (PKC) (RML)

                              Plaintiffs,

           v.

KIMBERLY-CLARK CORPORATION,

                              Defendant.
--------------------------------------------------------------X

A Memorandum and Order of the Honorable Pamela K. Chen, United States District

Judge, having been filed on February 12, 2026, affirming its prior decision finally approving the

Settlement Agreement and certifying the Settlement Class; approving and awarding: (1)

attorneys' fees in the amount of $3,169,335.02, (2) litigation expenses and charges in the amount

of $138,331.23, and (3) class representative incentive awards of $10,000 and $5,000 to Kurtz and

Honigman, respectively; it is

ORDERED and ADJUDGED that the Settlement Agreement is approved; that the

Settlement Class is certified; that plaintiff is awarded (1) attorneys' fees in the amount of

SPA-21

$3,169,335.02, (2) litigation expenses and charges in the amount of $138,331.23, and (3) class representative incentive awards of $10,000 and $5,000 to Kurtz and Honigman, respectively.

Dated: Brooklyn, New York
         March 19, 2026

Brenna B. Mahoney
Clerk of Court

By:   */s/Jalitza Poveda*
        Deputy Clerk

SPA-22

Case 2:15-cv-02910-PKC-RML    Document 1397    Filed 03/19/26    Page 1 of 2 PageID #: 3661

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

D. JOSEPH KURTZ, Individually
and on Behalf of All Others
Similarly Situated,                                            JUDGMENT

              Plaintiffs,

      v.                                          14-CV-1142 (PKC) (RML)

KIMBERLY-CLARK CORPORATION
and COSTCO WHOLESALE
CORPORATION,

              Defendants.

----------------------------------------------------------------X

GLADYS HONIGMAN; and
D. JOSEPH KURTZ, Individually
and on Behalf of All Others
Similarly Situated,                                            15-CV-2910 (PKC) (RML)

              Plaintiffs,

      v.

KIMBERLY-CLARK CORPORATION,

              Defendant.

----------------------------------------------------------------X

A Memorandum and Order of the Honorable Pamela K. Chen, United States District Judge, having been filed on February 12, 2026, affirming its prior decision finally approving the Settlement Agreement and certifying the Settlement Class; approving and awarding: (1) attorneys' fees in the amount of $3,169,335.02, (2) litigation expenses and charges in the amount of $138,331.23, and (3) class representative incentive awards of $10,000 and $5,000 to Kurtz and Honigman, respectively; it is

ORDERED and ADJUDGED that the Settlement Agreement is approved; that the Settlement Class is certified; that plaintiff is awarded (1) attorneys' fees in the amount of

SPA-23

$3,169,335.02, (2) litigation expenses and charges in the amount of $138,331.23, and (3) class

representative incentive awards of $10,000 and $5,000 to Kurtz and Honigman, respectively.

Dated: Brooklyn, New York
       March 19, 2026

Brenna B. Mahoney
Clerk of Court

By:    */s/Jalitza Poveda*
       Deputy Clerk

SPA-24